[No. 2526]

# C. C. JONES, RESPONDENT, *v.* CHARLES GOLICK AND S. L. KOVACHEVICH, APPELLANTS.

[206 Pac. 679]

1. HIGHWAYS—EVIDENCE HELD TO SHOW NEGLIGENCE IN OPERATING AN AUTOMOBILE.

In an action for damages, resulting from an automobile collision, evidence *held* sufficient to sustain a finding of negligence on the part of defendant in driving and managing his automobile.

2. MASTER AND SERVANT — ONE LOANING HIS AUTOMOBILE TO BROTHER-IN-LAW HELD NOT LIABLE FOR INJURIES INFLICTED; "FAMILY."

Where K. and his family lived with his mother-in-law and brother-in-law sharing the household expenses but not supporting them, and K. loaned his automobile to his brother-in-law, who damaged another automobile in a collision, there was no liability on the part of K., the brother-in-law not being a member of the "family" of K., since a "family" must have a head upon whom its other members are wholly or partially dependent.

3. DAMAGES—$415.30 HELD NOT EXCESSIVE FOR INJURIES TO AN AUTOMOBILE.

A judgment for $415.30 for injuries to an automobile *held* not excessive, though only $270 was expended for repairs; the evidence amply showing other damages.

4. APPEAL AND ERROR—QUESTION CALLING FOR OPINION HELD NOT PREJUDICIAL.

Allowance of a question calling for the opinion of a witness is harmless error, where the court could draw conclusions as to the information sought from other evidence.

APPEAL from Second Judicial District Court, Washoe County; *Thomas F. Moran,* Judge.

Action by C. C. Jones against Charles Golick and S. L. Kovachevich. From a judgment for plaintiff, defendants appeal. **Affirmed as to defendant Charles Golick and reversed as to defendant S. L. Kovachevich.**

*Augustus Tilden,* for Appellants:

The accident was due, in substantial part at least, to the irregular driving of plaintiff's son, by which the cause of action is defeated; and said irregular driving was the sole proximate negligent cause of the accident,

and renders plaintiff answerable in damages to defendant Kovachevich. It is not within the province of any court to guess between the irregular driving and defendant's peril, and declare that one rather than the other, or one more than the other, was responsible for the accident. "Judgments cannot be based upon assumptions, or upon conclusions reached by 'guess,' but must be sustained by facts shown by the evidence or admitted by the party to be bound." Richards v. Vermilyea, 42 Nev. 294. "Where the testimony leaves the matter uncertain, and shows that any one of half a dozen things may have brought about the injury, for some of which the employer is responsible, and for some of which he is not, it is not for the jury to guess between these half-dozen causes, and find that the negligence of the employer was the real cause, when there is no satisfactory foundation in the testimony for that conclusion." Patton v. Railway Co., 179 U. S. 658.

The evidence fails to show that defendant's peril was independent of plaintiff's irregular driving. "The credibility of the witness is not in question, but the credibility of his testimony is. These terms are by no means equivalent. Without the slightest reflection upon the integrity of standing of the witness, his testimony fails to win belief apart from any considerations definitely affecting the personality of the witness." Moore v. Rochester M. Co., 42 Nev. 175.

Plaintiff's angling course was the result of his negligent failure seasonably to discover defendant's approach, which failure was the sole proximate negligent cause of the accident. If the court cannot say that either car was at fault, the rule is that "if, in the prosecution of a lawful act, an accident, which is purely an accident, arises, no action can be maintained for a resulting injury." Walsh v. Railway, 8 Nev. 10.

The issue of negligence should be generally decided by the jury and not be disposed of by the judge as a matter of law. Huddy, Automobiles, 5th ed., sec. 267.

Defendant Kovachevich is not answerable for the negligence, if any, of defendant Golick. Huddy, Automobiles, 5th ed., sec. 623, et seq.; 5 Am. Law Rep, 226; 10 Am. Law Rep. 1449; Mogle v. Scott Co., 144 Minn. 173.

"An opinion as to the care or negligence of a person causing an injury, or of the person injured thereby, in the performance of the act causing or contributing to the injury is inadmissible. Similarly, an opinion as to the practicability of performing such act without injury is inadmissible either on the issue of primary or contributory negligence, and so is an opinion as to the sufficiency of the precautions taken to avoid an injury." 8 Ency. Ev., p. 955.

*Boyd & Curler* and *B. V. Curler,* for Respondent:

The issues are as to who was responsible for the accident, the amount of damage sustained by the innocent party, and the coresponsibility of defendant Kovachevich.

A judgment on conflicting evidence will not be set aside under any circumstances if supported by substantial evidence. Welland v. Williams, 21 Nev. 230; Craw v. Wilson, 32 Nev. 385; Vietti v. Nesbitt, 22 Nev. 390; Palmer v. Culverwell, 24 Nev. 114; Crawford v. Crawford, 24 Nev. 410; Barnes v. W. U. T. Co., 27 Nev. 438; Ford v. Campbell, 26 Nev. 578; Dixon v. Miller, 43 Nev. 280.

The real theory upon which the liability of the owner of a car rests is that, where an automobile is provided for the pleasure of the owner's family, the business of the owner in such a case is the furnishing of pleasure to his family, and the driver is acting for him within the scope of the business when he is driving the machine for such purpose, and the head of the family is responsible. Birch v. Abercombie, 74 Wash. 493; King v. Smythe, 140 Tenn. 225. The fact that during business hours the machine was used in the business of the owner does not in any sense afford an exception

to the general rule.  Dennison v. McNaughton, 228 Fed. 401.

The evidence is amply sufficient to justify the amount of the judgment.

By the Court, DUCKER, J.:

This action grows out of an accident in which an automobile owned by respondent was struck by an automobile belonging to appellant Kovachevich.  Respondent recovered damages in the court below.  Judgment was entered in favor of respondent and against appellants jointly and severally in the sum of $415.30.  From the judgment and order denying a motion for a new trial, this appeal is taken.

At the time of the accident respondent's son Elmer was driving his car, and appellant Charles Golick, a brother-in-law of Kovachevich, was driving the latter's car.

1.  The court found that the accident was caused by the negligent driving of the appellant Golick, and the first question we are called upon to determine is whether there is sufficient evidence to sustain this finding.  Appellants contend that the accident was due solely to the negligent driving of respondent's son. They further contend that, under any aspect of the evidence, the matter of negligence is left so uncertain that it is impossible for a court to assign the blame to one driver rather than the other.  The version of the conditions surrounding the accident, and the way in which it happened given by the witnesses testifying on behalf of respondent, the lower court, of course, had a right to believe.  If the substance of this version is sufficient to sustain that finding of the trial court, we cannot disturb it, even though there is other substantial evidence which contradicts this version.

The accident happened on the 10th of August, 1920, between 8 and 9 o'clock, p. m., at a point on a road about three miles westerly from the city of Reno.  The exact spot of the accident is a matter of dispute in

the evidence.   According to the version of appellants' witnesses, it happened on a small bridge which extends diagonally across the road.   The testimony of respondent's witnesses places it at a point about 8½ feet west of the bridge.

Respondent's automobile was traveling on the road in a westerly direction, and the other machine in the opposite direction.   In the vicinity of the scene of the accident, the road is comparatively straight from a point about 400 feet westerly from the bridge, to a point about 400 feet easterly from the bridge.   There is a curve in the road at each of these points.   A person in an automobile after it had rounded either curve could see an automobile after it had rounded the opposite curve and along this stretch of the road.   The version of the affair as given by respondent and his witnesses is substantially as follows: Respondent testified that he went to scene of the accident the next morning at about 7 : 30 or 8 o'clock, and as to observations and measurements made by him there.   He found his automobile in a damaged condition a short distance west of the bridge.   From measurements made by him, the rear end of the car was 18 inches north from the main traveled north wheel-track of the road.   From the left front wheel of the car across the road to the southern boundary thereof, the distance, as measured by respondent, was 10½ feet, and beyond this was a ditch running near the south side of the road.   The right front wheel was between 2 and 3 feet east of a telephone pole which stood near a fence on the north side of the road. At a point opposite the rear end of the car, the distance from the southern road-track south to the bank of the ditch was about one foot, making a clearance of about 9½ feet between the rear end of the automobile and the ditch on the other side of the road. According to measurements made by respondent, the bridge was about 15½ feet wide.   The main traveled rut of the road on the north side of the bridge was about 4½ or 5 feet from the north edge of the bridge.

Respondent testified that he traced the track of the right-hand wheels of his car back from the car across the bridge to where they left the road between the bridge and the culvert; that the track turned out of the road to the north between the culvert and the bridge and continued out of the road, crossing the bridge at a distance of about one foot from the north end of the bridge where the track came onto it, and at a distance of about 3 or 4 inches from the north end of the bridge where the track left it.

Respondent's son Lester testified that he went to the scene of the accident on the morning of the 11th of August; that he was there three times on that day; that he was there with his father at about lunch time and took some measurements; that apparently the front end of the car had been moved, "shoved over off the road for a distance of 16 or 17 inches" from the north wheel-track; that the "rear end apparently had not been moved, because the spokes of the hub were sticking down into the ground"; that the measurements showed that respondent's car was 8½ feet west of the bridge; that the distance from the body of the car in the rear to the south side of the road—to the traveled rut—was 8½ feet; that the distance from the front end of the car to the south side of the road was 10 feet and 3 or 4 inches; that the distance from the right front wheel of respondent's car to the telegraph pole was 2 feet and 4 inches; that the wheel was in a southeasterly direction from the pole; that the distance from the pole to the south side of the road was 17 feet and 6 or 7 inches, and from the pole to the ditch bank was 19½ feet; that on the first trip to the car witness traced the track of the right-hand wheel of respondent's car across the bridge; that it was about 14 inches from where the track came onto the bridge from the east to the north end of the bridge, and from where it left the bridge on the west side it was about 3 or 4 inches to the north end of the bridge.

Respondent's son, Elmer Jones, testified substantially

as follows: That he was going on 19 years of age;
that he had driven an automobile for at least three
years and was driving his father's car on the night of
the accident; that there were three other boys riding
in the car at the time; that during the evening he had
been driving between 15 and 20 miles an hour and was
driving at that rate as he approached the bridge where
the accident occurred; that he was slowing down for
the bridge to about 12 miles an hour when he reached
the culvert; that he could not tell how fast he was
going when he crossed the bridge, but he was slowing
down all the time; that he was slowing down at the
culvert when he first observed appellant's car coming
around the corner west of the bridge; that he esti-
mated the speed of the oncoming car at that time to be
about 35 miles an hour; that he started to turn his car
out of the road as soon as he saw the other car, and the
nearer it came the more he turned out; that he turned
out to give the road, as the other car was coming faster
than he was; that there was room enough for the two
cars to pass on the bridge with about a foot between
them; that he crossed the bridge on the north part of it
and had reached a point about 8 or 10 feet to the west of
the bridge, when the car driven by Golick collided with
respondent's car; that before the car driven by Golick
reached respondent's car it turned to the right and
then quickly swung to the left diagonally across the
road; that respondent's car was out of the road on the
north or right-hand side, with the lights pointing out
towards the field on that side, and the left-hand wheel
was about 18 inches out of the rut when the car was
struck; that Kovachevich's car did not seem to slow up
any; that when respondent's car was struck the back
end of the car did not move and the front end was
slung into the road; that appellant's car was carried
sideways to the bridge and stopped directly on top of it
and across the road at the same angle; that he was out
to the scene of the accident the next day or the day

afterwards; that the car had not been moved from where it was left after the accident.

On cross-examination as to the speed of his car, the witness testified as follows:

"Q. Did you go at the rate of 20 miles an hour until you reached the culvert? A. No, I was going about the same rate of speed.

"Q. Still 20? A. Well, I don't know whether it was 20 or 15.

"Q. You swear it was not 25? A. I know it wasn't 25.

"Q. Swear solemnly that it wasn't 25? A. No, I don't like to.

"Q. Would you swear it wasn't 30 miles an hour? A. I wouldn't like to.

"Q. Would you swear it was not 35 miles an hour? A. Yes, I would.

"Q. Anywhere between 30 and 35 miles an hour you wouldn't like to swear? A. No, I am pretty sure it wasn't."

With reference to the direction taken by the car in going over the bridge, the witness testified as follows on cross-examination:

"Q. Then, when you got down here to make the bridge you had to make it at an angle? A. I didn't have to make it at an angle.

"Q. Didn't you take it on that angle? A. I took it on that angle, yes."

Melvin Curtis, a witness on behalf of respondent testified substantially as follows: That he was 17 years old and had driven a car frequently since 1917 and had also driven a truck; that he had driven or ridden in a car sufficiently to have an idea of the rate of speed a car was going; that on the night of the accident he was riding in respondent's car and was sitting on the rear seat on the left-hand side; that they had not been traveling more than 20 miles an hour that evening; that they were directly over a little culvert about 50 feet from the bridge when he first observed

Kovachevich's car coming around the bend, possibly 300 feet or more west of them; that respondent's car was going 7 or 8 miles an hour when it crossed the bridge; that Jones turned his car to the right when a little past the culvert and had traveled possibly 8 or 10 feet beyond the bridge when the accident occurred; that the rear end was then 8 or 10 feet past the bridge; that when the oncoming car got within about 25 feet of respondent's car it turned to the right, and, coming about 20 feet, turned diagonally across the road and struck respondent's car; that at the time of the impact respondent's car was off to the right of the road; that it was to the right of the right-hand wheel-track of the road going west, and the lights of the car were pointing out over the field to the north of the road; that Kovachevich's car struck respondent's car a glancing blow, a severe blow; that it was severe enough to throw the witness nearly over into the front seat; that the front part of Golick's car and rear part of respondent's car came together; that when he got out the front wheels of respondent's car were about on the north wheel-track of the road; that it was jacked up and pushed over out of the road; that when Kovachevich's car glanced off of respondent's car it skidded sideways up on the bridge and stopped, fronting north just about parallel with the bridge; that witness had been driving that road a good deal and knew the culvert was there.

Charles Patterson, a witness on behalf of respondent, testified that he was 19 years of age and had had considerable experience in driving automobiles; that he was familiar with the road where the accident happened and was riding on the rear seat of respondent's automobile on the right-hand side at the time of the accident; that the car had not been driven over 20 miles an hour on that night; that he first noticed Kovachevich's car coming around the turn about 300 or 400 feet west of the culvert; that the Jones car was then just passing the culvert, which was about 40 to 50

feet east of the bridge; that when they crossed the culvert Jones slowed the car down and turned to the right to let the other car pass; that when they crossed the bridge respondent's car was going from 5 to 6 miles an hour; that respondent's car was from 7 to 8 feet west of the bridge when the accident happened; that when he first observed Kovachevich's car it was coming, in his judgment, at the rate of from 30 to 35 miles an hour; that witness did not notice the speed of Kovachevich's car at the time of the impact, but it struck respondent's car an awful blow and knocked the front wheels into the road; that just prior to the impact the lights of respondent's car were pointing out towards the field; that after the accident the front part of the car was jacked up and moved off the road about 18 inches; that before it was moved the left front wheel was about 1½ feet inside the north wheel-track of the road; that the left wheel in front was just off the north wheel-track; that, when witness got out of the car, Kovachevich's car was standing lengthwise with the bridge.

Lawrence Bernasconi, a witness on behalf of respondent, testified that he had ridden in cars a great deal; that he was riding in the Jones car on the evening of the accident; that respondent's car was not going over 20 miles an hour a quarter of a mile from the place where the accident happened; that he first saw the Kovachevich car that evening when it collided with respondent's car; that respondent's car was then 8 or 10 feet west of the bridge and off to the right of the main road; that Jones slowed his car down to take the bridge, and it was going between 6 and 7 miles an hour when it crossed the bridge; that after the collision the left front wheel was in the right rut of the main road going west, the north rut; that after the accident Kovachevich's car was on the bridge parallel with it, facing towards the north; that the front end of the car was about 14 inches from the north end of the bridge, and the hind end of the car about the same

distance from the south end of the bridge; that the car was in the center of the bridge; that immediately after the accident he had a conversation with Golick in which the latter said he did not see the bridge.

This evidence is sufficient to justify the finding of the court below that Golick was negligent in driving and managing the car, and that his negligence was the cause of the accident. According to this version, both drivers had ample opportunity to see each other's car while they were approximately 400 feet apart, and over the entire distance. Jones immediately turned out of the road to the right and commenced to slow down. He crossed the bridge on the right-hand side and near the northern edge of it at a low rate of speed. According to witness Curtis, the car was traveling about 7 or 8 miles an hour when it crossed the bridge. According to witness Patterson, it was going at the rate of about 5 or 6 miles an hour. Witness Bernasconi also testified that the car was traveling 5 or 6 miles an hour when it crossed the bridge. All of this testimony placed respondent's car a distance of from 7 to 10 feet west of the bridge when the accident happened, and clear out of the main traveled ruts of the road on the north side. The actual measurements as testified to by respondent and his son Lester placed the rear end of the car 8½ feet west of the bridge, and the right-hand hind wheel 18 inches north of the north wheel-rut of the road. Obviously, as respondent's car was to the north of the main traveled part of the road, there was ample room for the other car to pass, even though it kept all of the road. Moreover, the measurements, as testified to by respondent, show that there was a clearance of about 9½ feet between the rear end of his car and the ditch on the south side of the road, and that the distance from the left front wheel to the southern boundary of the road was 10½ feet. This testimony is closely corroborated by respondent's son Lester. It appears from respondent's evidence that young Jones could not have turned to the right much further without incurring the danger of colliding with the telegraph

or telephone pole. As soon as he rounded the west curve, Golick had an opportunity to see respondent's car and to slow down. But, notwithstanding this, he was going at a righ rate of speed when his car struck respondent's car. With all of the road clear before him and some space to spare, he was going so fast that, when he saw the ditch before him and turned back into the road, he was unable to manage his car and go through without striking respondent's car. These are legitimate inferences which the trial court had a right to draw from respondent's evidence. True, the version given by the witnesses who testified on behalf of appellants is diametrically opposed to respondent's evidence in several respects, and exonerates Golick from all blame, and attributes negligence to the driver of respondent's car. We will not attempt to detail this testimony, for to do so would unnecessarily extend this opinion. Counsel for appellants concedes the rule that, where there is substantial evidence to support the finding of the lower court, this court cannot disturb it. This court cannot pass upon the credibility of witnesses, for this is exclusively the function of a trial court or jury.

By reason of the applicability of these rules of law, the theory of counsel for appellants that the evidence leaves the question of negligence so uncertain that the trial court was not justified in attributing negligence to one driver rather than the other cannot be accepted as the doctrine of the case.

In support of this theory, if we do not misapprehend counsel, it is urged that according to the testimony of Elmer Jones his car angled across the bridge; that this made it necessary for Golick to turn out to the right, where he was confronted by a ditch; that in order to avoid this peril he was forced to turn back into the road, which made the accident unavoidable. True, Elmer Jones made the following rather indefinite statement on cross-examination, "I took it at an angle, yes," when referring to the manner in which the car went over the bridge. But the testimony of respondent and

his son Lester, as to the observations they made, showed that the angle was very slight. From the respondent's observations it appears that the track made by the right wheel of his car came onto the bridge from the east at a distance of about one foot from the north end of the bridge, and left it about 3 or 4 inches from the north edge of the bridge. His son Lester places these distances at about 14 inches on the east side, and 3 or 4 inches on the west side. If the trial court credited this testimony, it would have been justified in concluding that there would have been ample room for Golick to have driven his car safely over the bridge if he had managed it properly, even if the cars had met at this point, as claimed by witnesses for appellants. The theory that the trial court could not, under any view of the evidence, legitimately fix the blame on one driver rather than the other, also loses sight of the fact that the evidence of respondent tends to prove that at the time of the accident Elmer Jones was driving at a very low rate of speed, while Golick was driving fast.

2. It is next contended on the part of appellant Kovachevich that, though he was the owner of the car in use at the time of the accident, which resulted in injuries to respondent's car, since the car was being used and driven by one to whom he had loaned it, he is not liable. In view of the manner in which the case is presented on this appeal, as to the liability of Kovachevich, we need only to consider the question as to whether or not the appellant, Golick, who was driving the car, was a member of the family of the appellant Kovachevich. The undisputed evidence shows that Kovachevich was, at the time of the accident, engaged in business, and that he used the car in question in his business during the hours from 8 a. m. to 6 p. m., and for the pleasure of himself and family at other times. It is also undisputed that appellant Kovachevich, together with his wife and 19-year-old child, lived in the same house with his mother-in-law and her three

unmarried children; they divided the expense thus incurred. It is also undisputed that appellant Golick, shortly before 6 o'clock in the evening, asked appellant Kovachevich if he (Golick) could have the use of the car on the evening of the accident, if Kovachevich did not intend to use it; that Kovachevich responded that he would consider it, and later, about 7 o'clock when Golick again asked about the car, Kovachevich told him to take it. Was Golick a member of the family of Kovachevich? The word "family" is a word of great flexibility, and when used in a statute or written instrument it must be given an interpretation in keeping with the idea sought to be expressed; but we do not think the word can be given such a wide meaning in the circumstances of this case as to make appellant Golick a member of Kovachevich's family. Kovachevich contributed nothing to the support of any of the persons residing in the house, except for his child's, his wife's, and his own. So far as it appears, he was in no way legally or morally under obligations to contribute to their support, and certainly they received none from him. The mere fact that they resided in the same house and shared the household expenses is no more an evidence that the mother-in-law and her unmarried children are members of Kovachevich's family, than it is that he is a member of the mother-in-law's family. There must be something more than mere residing together to constitute them members of the family of the other. Kovachevich, so far as the evidence goes, owed no duty whatsoever to provide the Golick family with the use of an automobile, and on the particular occasion loaned it for the evening. We think the definition of "family" which fairly states the rule applicable to this character of a case is given in the case of Sheehy v. Scott, 128 Iowa, 551, 104 N. W. 1139, 4 L. R. A. (N.S.) 365, where it is said:

"To constitute one or more persons, with another, living together in the same house, a family, it must

appear that they are being supported by that other in whole or in part, and are dependent on him therefor, and, further, that he is under a natural or moral obligation to render such support."

In the case of Moredock v. Moredock (C.C.) 179 Fed. 163, the words "his family" were construed to mean "his children." Words and Phrases, Corpus Juris, and other works contain citation to many cases wherein the word "family" is defined, but no two of them are alike. While the word is one of great flexibility, we think it may be said that the underlying principle running through the mass of authorities, is that there must be a head to a family, upon whom the other members are wholly or partially dependent. 25 C. J. 664.

Such is not the situation in the instant case.

3. As to the contention that the judgment is excessive, we need only to say that we think it is not sustained. At least, there is ample evidence to support the findings and judgment as to the amount of damages, and we would be trenching upon the prerogative of the trial court were we to reverse the judgment on this account. True it is that the repair bill was only $270, but there is ample evidence of other damages sustained.

4. It is urged that the court erred in overruling appellants' objection to the following question asked of Melvin Curtis:

"Mr. Curtis, was or was not there room enough for the defendant to have crossed that bridge, in his car, without coming in contact with the Jones car?"

The question was answered in the affirmative. It was objected to as calling for the opinion of the witness. If we assume that it was error to allow the question, still it was not one of which appellants can complain. As the conditions surrounding the accident were all in evidence and the court could therefore draw its own conclusion as to whether Golick could have crossed the bridge without striking respondent's car, we think that it is improbable that the court was at all influenced by the witness's answer to the question. Perceiving no prejudicial error other than that pointed out,

it is ordered that the trial court modify its judgment heretofore entered so as to render judgment in favor of appellent Kovachevich, and, as so modified, it is ordered that the judgment be affirmed.