## GALLAGHER et al. v. HOLCOMB.

No. 24675.  April 23, 1935.

Ben F. Williams, Homer H. Cowan, and T. R. Benedum, for plaintiffs in error.

Luttrell & Holland, for defendant in error.

PER CURIAM. This is an appeal from a judgment rendered in the district court of Cleveland county in favor of John Holcomb, as plaintiff, being defendant in error herein, against John Gallagher and J. T. Gallagher, as defendants, being plaintiffs in error herein. The parties will be referred to as they appeared in the court below.

The petition in substance alleges that a Ford coach automobile owned by the plaintiff was, on the 5th day of December, 1930, being driven over U. S. Highway No. 77 by Mabel Holcomb, a daughter of the plaintiff, and at a point about a quarter of a mile northwest of a place known as the

Slaughterville Store and Filling Station, while traveling in a southeasterly direction, the defendant J. T. Gallagher carelessly, negligently, and recklessly ran the automobile which he was then operating into and upon the Holcomb car, causing it to be overturned and wrecked, to the plaintiff's damage in the sum of $400; that the conduct so ascribed to J. T. Gallagher was the direct and proximate cause of the damage alleged, that the defendant John Gallagher was the owner of the car so operated by J. T. Gallagher, and that the latter was at the time a servant and agent of the former, and was at the time engaged in the business and interest of the defendant John Gallagher.

The defendant John Gallagher by way of separate answer made general denial; and further alleged that if such injury was sustained it was due to the negligence and carelessness of the driver of the Holcomb car, and that such damage was due to the contributory negligence of such driver; that Mabel Holcomb was an incompetent driver and was known so to be by plaintiff; that the plaintiff was negligent in permitting her to drive the car, and was negligent in permitting the steering gear and brakes to be in such bad repair that the driver could not properly control the car. This defendant in his separate answer admitted that he was the owner of the car, but denied that J. T. Gallagher was at the time of the alleged injury his agent or servant, and denied that the car was then operated in his interest or business or with his approval or permission.

The separate answer of the defendant J. T. Gallagher contains substantially the same averments as those found in the answer of the defendant John Gallagher, except that there was no allegation regarding agency.

The cause was tried to a jury, and at the close of the evidence the defendant John Gallagher moved the court to instruct the jury to return a verdict in his favor, for the reason that there had been no evidence introduced by plaintiff establishing agency of J. T. Gallagher. This motion was overruled, to which ruling exception was taken and such exception was allowed by the court.

The defendant J. T. Gallagher demurred to the evidence on the ground that the same wholly fails to sustain the allegations of plaintiff's petition or to establish any liability on the part of the defendant to the plaintiff. This demurrer was overruled, to which ruling the defendant excepted and such exception was allowed by the court.

Mabel Holcomb, as disclosed by the evidence, was of the age of 16 or 17 years, and at the time of the alleged injury was attending school at the town of Noble. She resided in the home of her parent and drove to and from school in a Ford coach furnished her by her father. On the day of injury she, in company with three other young ladies, left the school in this car to return to her home, but stopped for a brief time at the post office in Noble. While the young ladies were at the post office, the defendant J. T. Gallagher, accompanied by another young man, passed through Noble on his way home from the University, where he was attending school. J. T. Gallagher at the time was driving a Chevrolet coupe, the property of his father, the defendant John Gallagher. In going to their respective homes the occupants of both cars had occasion to travel in a southeasterly direction from Noble over U. S. Highway No. 77. Some distance south of Noble the Holcomb car overtook the Gallagher car, and Mabel Holcomb, driver of the Holcomb car, attempted to pass the other, but failed for the reason that the defendant J. T. Gallagher, driver of the Gallagher car, speeded up and prevented it. Farther down the highway, however, the Holcomb car did pass the Gallagher car and drew ahead some distance, just how far the evidence did not disclose. Then, in turn, the Gallagher car overtook the Holcomb car and the driver, J. T. Gallagher, attempted to pass. He testified that at the start Mabel Holcomb prevented him from passing by driving her car over on the left side of the paving, thus blocking his way, but he finally drew up by the side of the Holcomb car and the two cars traveled side by side for some distance.

The defendant estimated the distance at 50 yards or perhaps a little farther to the point where the Gallagher car passed the Holcomb car. The two drivers had been acquaintances from childhood, and a careful review of the testimony presented by both groups of young people leaves room for the suspicion that there was a little of the spirit of rivalry on the part of both drivers; although in their testimony all the young people were quite careful to avoid admitting that they were racing. The Gallagher car passed the other at a culvert; this culvert being about six feet across, made of concrete, the top of which came up

to the level of the concrete paving on the highway; the paving being a slab 18 feet in width, with a marking showing its center line. J. T. Gallagher testified that they passed the other car on this culvert, and that at the time he was traveling at a speed of around 60 miles per hour. Mabel Holcomb testified that her car was going at a speed of perhaps 45 miles per hour. One of the other occupants of the Holcomb car thought they might have been going 50 miles per hour. The Holcomb car left the highway about five feet south of the culvert, turning to the right and rolling over three or four times. None of the young people in the car was seriously injured, but all were left dazed and confused. Mabel Holcomb testified that she saw the Gallagher car hit her car, and that the impact caused her car to leave the road and resulted in the injury sustained. Velma Bullard, one of the occupants in the Holcomb car, testified that she was sitting on the back seat; that she first noticed the Gallagher car when it drew up to pass the Holcomb car, and that it passed on the bridge, and right at that time the Holcomb car commenced to go over. She said that she did not hear the Gallagher car hit the other car. Adel Whittaker, another occupant, testified that in passing the right fender of the Gallagher car hit the left wheel of the Holcomb car; that she heard it hit; that the Holcomb car went off the pavement immediately after the hit. Hazel Holcomb, Mabel's cousin, testified that she remembered seeing the cars hit; that the back of the Gallagher car hit the front part of the Holcomb car; that from the time the cars hit the Holcomb car "went sideways, kinda went to the right"; that it did not go over until it left the pavement; that they were on the north side of the bridge when the other car hit the Holcomb car.

Several witnesses testified to certain dark marks on the pavement extending from the bridge for something like 50 feet north, made by the wheels of the Holcomb car, indicating that the brakes had been applied. The occupants of the Holcomb car stated that at the time the other car passed they were on the right side of the paving. J. T. Gallagher also so testified.

Felix Hamilton, the young man who was riding with J. T. Gallagher, testified that the Gallagher car did not hit the Holcomb car. J. T. Gallagher testified that his car did not touch the other car. Several witnesses stated that there were no marks on the Gallagher car indicating a collision. Gallagher further stated that he did not see the Holcomb car leave the highway, but that he heard the crash. In answer to inquiry as to where he was when he heard the crash, he stated that he was over on the right-hand side of the paving traveling ahead of the Holcomb car. He admitted that there was no traffic ahead making it necessary for him to cross over at that point. He stated that both cars were on the culvert when he passed, and that the Holcomb car went over the shoulder of the highway about four or five feet south of the culvert.

It is urged that the court erred in overruling the defendant J. T. Gallagher's demurrer to the evidence.

That there was conflicting testimony given is beyond question, but the jury, after hearing the witnesses, and after receiving fair and sufficient instructions from the court on all issues affecting the defendant J. T. Gallagher, brought in a verdict for the plaintiff, which verdict must be taken to embrace a finding that the defendant was responsible for the injury complained of. There being competent evidence on which the jury could base such finding, the court did not err in overruling the demurrer.

"In a civil action triable to a jury the verdict of the jury is final and conclusive on disputed questions of fact, if there is any competent evidence reasonably tending to support the same." Inter-City Finance Corporation v. Hooker, 168 Okla. 170, 32 P. (2d) 277; Anderson v. Cardwell, 130 Okla. 92, 265 P. 627; Pyle v. Hood, 128 Okla. 239, 162 P. 660.

We now come to consider the assignment of error urged by the defendant John Gallagher, that the court erred in overruling his motion for the court to instruct the jury to return a verdict in his favor. It was stated in this motion, and is urged in defendant's brief, that there was no evidence introduced establishing agency, that is, that the defendant J. T. Gallagher on the occasion of the injury complained of was the agent or servant of such defendant.

The evidence disclosed that the defendant J. T. Gallagher, at the time of the injury, was residing with his parents on a farm; that he was attending school at the University, and drove to and from school in an automobile, and on the occasion of the injury was returning home from school,

that J. T. Gallagher had a car of his own, a Ford roadster, which he used on his trips to the University, but on the day of the injury, and on several prior occasions, used his father's car, a Chevrolet coupe. Regarding the use of this car, J. T. Gallagher testified:

"Q. Whose car were you driving? A. My dad's. Q. Where had you been that day? A. I had been here to the University, to school. Q. Were you attending school out here? A. Yes, sir. Q. You had been attending school how long up there? A. That was my first year. Q. Have you a car of your own? A. Yes, sir. Q. What kind of a car is yours? A. Ford roadster. Q. What was this car—what kind? A. I was driving a Chevrolet coupe. Q. That was your father's car? A. Yes, sir. Q. Did your father give his consent to drive that car that day? A. No, sir. Q. You just took the car without his consent—without asking him? A. Yes, sir. He didn't know I had it."

On cross-examination the witness further testified:

"Q. You had a car of your own, your father had this car, which the family used? A. Yes, sir. Q. You used it? A. With his permission. Q. You had specifically to go to your father and ask for it? A. Yes, sir. Q. Every time? A. Yes, sir. Q. Your father had given you specific instructions that you couldn't use that car? A. Yes, sir. Q. On any occasion without his consent? A. Yes, sir. Q. Where was he at the time you took the car? A. I don't know."

There was further testimony given by this witness to the effect that he took the car without his father's knowledge and without his consent.

On this subject John Gallagher testified:

"Q. Did you understand the question—was your boy driving your car on the day of the accident with your knowledge and with your consent? A. Driving my car? Q. Yes. A. No, sir. He didn't have my consent, but he was driving my car that day. Q. Did you know that he had your car until he had left and gone with it? A. No, sir."

Aside from the statements of the two defendants there was nothing in the evidence to show under what circumstances, by what authority, or for what purpose the son drove the father's car on the day of the injury. This being a family car, we think that when the minor son took it and used it, as he did on the occasion in question, a presumption arose that he was acting as servant and agent of the father, but

this presumption could be overcome by uncontroverted testimony, and the testimony of the defendants above quoted stands uncontroverted.

In the case Carter v. Martin, 120 Okla. 179, 250 P. 906, the rule governing the parents' liability in an injury case of this character is stated as follows:

"Where a minor son negligently drives his father's automobile, causing injury to a third person, the presumption is that he was acting as agent and servant of the father, but when this reciprocal relation is clearly disproved by uncontroverted testimony, then the presumption no longer exists, and it is immaterial that the testimony disproving such relation is brought out in the cross-examination of one of the plaintiff's witnesses offered by plaintiff for the purpose of making his case when such cross-examination was proper and developed no conflict in the story of the witness. In such case it is not error to sustain a demurrer to plaintiff's evidence."

Plaintiff in his brief calls attention to section 8025, C. O. S. 1921, as bearing on the question of agency in this case. This section is as follows:

"Section 8025. Support due from parent in custody. The parent entitled to the custody of the child must give him support and education suitable to his circumstances. If the support and education which the father of a legitimate child is able to give are inadequate, the mother must assist him to the extent of her ability."

We think it is doubtless true that the father in this case was under obligation to furnish his son with an education; but we do not think that this statute was intended to require every father to give his son a university education, as this in many cases would be requiring the impossible. And whether in any case such a requirement can be made, we do not here decide. It is plain that under this statute only an "education suitable to the circumstances" of the parent is required. The evidence in this case is silent as to what the circumstances of the father were, and to say that they were such as to require him to furnish his son with a university education would be an unwarranted presumption. Also, the evidence is silent as to whether the son was attending the University at the direction of the father or on his own initiative, and to say that he was attending at the direction of the father would also be unwarranted.

We are of the opinion that the evidence failed to show that the son was agent or

servant of the father, or that he was engaged in his father's business, but, on the contrary, did show that he was engaged on a mission of his own and acting in furtherance of his own purposes.

The rule which has been universally adhered to by this court is found in the case of Schmitt v. Kier, 111 Okla. 23, 238 P. 410:

"A father is not liable for the negligent operation of an automobile by his minor son, unless in its operation the relation of principal and agent exists between father and son.

"A father is not liable for injuries to a third person arising from the negligence of his son while driving alone, with the father's consent, on his, the son's, mission and pleasure, the automobile owned and kept by the father for the pleasure and convenience of the family, since such son, under the circumstances, is not the agent or servant of the father." See Jarmar v. Brightwell, 162 Okla. 124, 19 P. (2d) 366; Stumpf v. Montgomery, 101 Okla. 257, 226 P. 65; St. John et al. v. Ivers, 124 Okla. 215, 255 P. 706.

The second syllabus in the case Jarmar v. Brightwell, supra, reads as follows:

"Proof that the defendant owned a car and that it was being driven by a child of the defendant at the time of the accident, with his consent, is not sufficient to raise a presumption that the child was acting as the agent of the father and within the scope of his authority."

The plaintiff in his brief claims that the court was in error in permitting the defendant John Gallagher to amend his separate answer by attaching a verification thereto after the plaintiff had introduced his evidence in chief and the defendants had begun with their evidence; that by the failure to verify the answer at an earlier date, agency as alleged in plaintiff's petition was admitted. Under the rule governing amendments to pleadings out of time, the matter rests largely in the discretion of the trial court, with a view to the furtherance of justice. In the case of Boling v. Asbridge, 84 Okla. 280, 203 P. 894, there is found at least a suggestion of the propriety of the ruling complained of. We think, however, that the interests of the defendants would not have been jeopardized had the court refused to permit the amendment.

An examination of the petition, the separate answers, the opening statements of the plaintiff's attorney, and the evidence offered, is convincing that the agency sought to be charged and established was one not arising out of contract, but which arose solely from the fact that the driver of the car causing the injury was a son of the owner and that the car was a family car. That the plaintiff proceeded on this theory appears not only from allegations contained in his petition, but also from his opening statement to the jury. In his opening statement, among other things, was the following:

"* * * The defendant J. T. Gallagher—there are two defendants in this case, Mr. Gallagher and his son J. T. Gallagher—his son was driving the car that belonged to Mr. Gallagher. * * *"

There was no proof of agency otherwise created or arising. An agency so created is sometimes spoken of in the decisions as "permissive use" or "an authority" granted by the parent to the child, and arises from the fact that the parent owns the car, that the car is driven by his child, and when the driver by his negligence causes damage to a third person, the law raises a presumption that the child was acting as servant or agent of the parent. This presumption may be overcome, and it is the uniform holding of this court that it is overcome when it is made to appear by the evidence that on the occasion of the injury the child was operating the car for the child's own pleasure or business, and not in the interest or business of the parent. Under the rule that a failure to make a verified denial of agency properly alleged, such agency is admitted, the defendant John Gallagher, by failing to verify his separate answer (at least, until such verification was made by amendment by leave of court) admitted such agency, that is, permissive use or authority, to his son, J. T. Gallagher, to use the father's car. The failure to so verify was not, however, an admission that the son was using the father's car in the business or interest of the father on the particular occasion when the damages alleged were inflicted; and when the father, John Gallagher, in addition to his general denial, further alleged that the son on that occasion was driving the car without permission and approval, and not in any business or interest, and was not then the agent or servant of the father, these are allegations which do not have to be verified. In such case such authority is not denied; but the allegation contained in plaintiff's petition that the son was then acting under such authority is not a matter which had to be denied

under oath or taken as true. And the allegations contained in the defendant John Gallagher's separate answer, alleging facts which, if true, disclose that the son was not at the time of the injury acting under the authority granted by the father, are defensive matters which do not have to be verified. This is the holding of this court in St. John et al. v. Ivers, supra.

The first paragraph of the syllabus of this case is as follows:

"In a negligence action, general allegations of agency, in a petition based on permissive use of an automobile by a daughter of the owner, are admitted by an unverified general denial, but such admission goes only to the character of the agency alleged and, where the answer, in addition to the general denial, contains specific averments that on the particular occasion involved, the daughter was not only acting without the scope of her general authority, but in disregard of specific instructions, such allegations of defensive matter do not have to be verified."

And where the defendant, as was done in the instant case, establishes that the son, on the occasion of the injury, was not driving the parent's car with the consent or approval of the latter, or in his business or interest, and was not then acting as his servant or agent, and such evidence is uncontradicted by rebuttal evidence, and the witnesses in no way impeached, the presumption of authority previously existing is overcome, the absence of authority on the particular occasion is established, and no question of fact as to agency at the time of the accident remains. St. John et al. v. Ivers, supra.

Because of error of the trial court in overruling the defendant John Gallagher's motion for a directed verdict, the judgment of the trial court in favor of the plaintiff and against the defendant John Gallagher is vacated and set aside, with instructions to the trial court to enter judgment in his favor. Other assignments of error affecting this defendant are not here considered.

Since there was evidence reasonably tending to establish negligence on the part of the defendant J. T. Gallagher in operating the car used by him, and that such negligence was the direct and proximate cause of the damages complained of, and since no errors of law affecting his rights have been called to the attention of this court, the judgment against him, based upon the verdict, cannot be disturbed.

The Supreme Court acknowledges the aid of Attorneys L. A. Foster, W. H. Thomas, and Chas. R. Alexander in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by L. A. Foster and approved by Mr. Thomas and Mr. Alexander, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and WELCH, PHELPS, CORN, and GIBSON, JJ., concur.