183 P.2d 850

**MILLER et al. v. HOEFGEN et al.**

No. 5025.

Supreme Court of New Mexico.

Aug. 6, 1947.

Lewis R. Sutin, of Albuquerque, for appellants.

Gilbert & Gilbert, of Santa Fe, and Dailey & Rogers, of Albuquerque, for appellee Hoefgen.

COMPTON, Justice.

This is a suit to recover damages from the master for negligence of his servant in the operation of the master's truck.

For convenience we will refer to the parties as they appeared in the lower court.

On March 25, 1945, an automobile in which plaintiffs, James Miller and Stella Miller, were riding, was struck by a pick-up truck operated by the defendant, Buell Rinner, Jr., seriously injuring plaintiffs. The truck was owned by the defendant, Leonard K. Hoefgen, doing business as Valley Oil Company. The plaintiffs charged Rinner with operating said truck negligently, and that Rinner was employed by Hoefgen and was acting within the scope of his employment at the time of the accident. The ownership of the truck and the negligence of Rinner was admitted by Hoefgen. He denied, however, that Rinner was acting within the scope of his employment.

On the day in question, Rinner was employed by Hoefgen in a filling station. Rinner had worked overtime fixing a tire for a customer and his manager permitted him to use the truck in question to go to lunch. The accident occurred while Rinner was driving the truck to lunch.

The court found for the plaintiffs as against the defendant, Rinner; and for the defendant, Hoefgen, on the ground that Rinner was not acting within the scope of his employment at the time of the accident. Rinner did not appeal.

The following are the findings of fact made by the trial court except those we deem unnecessary to a decision:

"4. That on the date of the said accident, Sunday, March 25, 1945 defendant Buell Rinner, Jr. was employed by defendant Leonard K. Hoefgen, at his service station situated on North Fourth Street, Albuquerque, New Mexico and was on duty and in the employ of said Leonard K. Hoefgen on that date; That Buell Rinner, Jr. had worked approximately one-half hour past his lunch time in the employ of and for the benefit of Leonard K. Hoefgen, and because of his being late for lunch Earl Hoefgen told him to take the pick-up truck involved herein and go to lunch.

"5. That at the time of the accident on March 25, 1945 the defendant, Buell Rinner, Jr. sometimes called Buell Renner Jr.,

was driving the automobile pick-up truck of the defendant, Leonard K. Hoefgen, d/b/a Valley Oil Company, for his sole purpose and pleasure and not as a servant, agent or employee or in the furtherance of the business of the defendant, Leonard K. Hoefgen, d/b/a Valley Oil Company."

Then concluded as a matter of law:

"2. That at the time of the accident on March 25, 1945 the defendant Buell Rinner, Jr., sometimes called Buell Renner, Jr., was not engaged in the scope of his employment as a servant, agent or employee of the defendant, Leonard K. Hoefgen, d/b/a Valley Oil Company.

"3. That the defendant, Leonard K. Hoefgen doing business as Valley Oil Company, is entitled to judgment that the plaintiffs take nothing against him by reason of their complaint herein, and that he have and recover of and from the plaintiffs the costs of suit herein incurred."

The question for our determination is whether the defendant, Rinner, was acting within the scope of his employment at the time his negligence caused the injuries to plaintiffs. Finding No. 5 is attacked because it is asserted that it is not supported by substantial evidence.

The evidence of Rinner's employment at the time of the accident was the testimony of Earl Hoefgen, the manager in charge of the service station where Rinner was employed. The undisputed facts relative to the issue of scope of employment are that on the day in question Rinner had worked at the filling station until 12:30 p. m., one-half hour past lunch time, to service a car for a customer of Hoefgen. Rinner finished this service and started to lunch. The manager, Hoefgen, observing the time, said to Rinner: "Mr. Rinner, it is past noon, you may take the pick-up and go home to your dinner."

In the course of his employment, Rinner, among other things, was required to operate the truck in question, using it for the delivery of fuel oils. His usual lunch time was from 12:00 to 1:00 p. m. This hour, however, was indefinite, depending upon the business at the station at the particular time. He always had an hour off, regardless of the time he went to lunch. It was a usual thing for Rinner and other employees to work beyond the regular lunch hour. Previously, the truck in question had not been used by Rinner, or other employees to go to their meals or on personal errands.

It is a rule supported by the weight of authority that liability of the master for the use of an automobile by the servant is created only when it appears (1) that its use is with the knowledge and consent of the master, and (2) that it is used within the scope of employment of the servant and to facilitate the master's business.

322

The rule is stated in 42 C.J. 1109, Sec. 868, as follows: "The use by the chauffeur of the owner's vehicle for the purpose of going to and from his place of employment is a use for the purposes of the chauffeur, and the owner is not liable for an injury occasioned while it is being so used, either without his knowledge or consent or with his permission, as *for example, where he is going to or returning from a meal.* * * *" (Emphasis ours.)

Again in 5 Blashfield, Cyclopedia of Automobile Law and Practice, Perm.Ed., § 3042 p. 199; as follows: "Although the eating of food may be necessary to keep up an employee's vitality so as to enable him to perform the duties of his employment, ordinarily a servant cannot be said to be on his master's business or acting within the scope of his employment while eating *or on his way to* eat." (Emphasis ours.)

The exceptions to the rule are stated in 5 Blashfield, Op.Cit. at page 201: "However, the circumstances may be such that a servant may be within the scope of his employment in going to and from meals. Thus, if the servant's contract of employment entitles him to transportation to and from meals, or if the contract provides that meals shall be furnished by the master, or if a driver is permitted to drive the master's automobile to and from his meals for the purpose of enabling him *to reach his work earlier,* or where such travel is combined with his master's business, or

where the deviation was slight, his negligent acts in driving to and from his meals may be within the scope of his employment." (Emphasis ours.)

Plaintiffs assert that they come within the exceptions. On the contrary the defendant, Hoefgen, contends that they come within the rule.

As we appraise the evidence in the case, the defendant, Hoefgen, as an accommodation to the defendant, Rinner, permitted him to use the truck on a personal errand. Its use by the defendant, Rinner, did not shorten the lunch period, nor enable him to return to work earlier. There was no previous understanding that Rinner would be permitted to use the truck for working overtime. See Ebers v. Whitmore, 122 Neb. 653, 241 N.W. 126; Thannisch Chevrolet Co. v. Kline et al., Tex.Civ.App., 134 S.W. 2d 433; Gewanski v. Ellsworth, 166 Wis. 250, 164 N.W. 996; Bloom v. Krueger, 182 Wis. 29, 195 N.W. 851.

We, therefore, conclude that at the time of the accident Rinner was engaged in a personal mission and that his business relations with the defendant, Hoefgen, were terminated, or at least suspended, prior to the time the injuries were sustained by plaintiffs.

We have considered all assignments of error and find no merit in them. The findings of fact made by the trial court are amply supported by the evidence.

The trial court was correct in its holding and the judgment should be affirmed, and it is so ordered.

BRICE, C. J., and LUJAN, SADLER and McGHEE, JJ., concur.