601 P.2d 722

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY and Stanley Chavez, Plaintiffs-Appellees,**

v.

**Joe L. DURAN, Defendant,**

and

**Frank Duran, Defendant-Appellant.**

No. 3678.

Court of Appeals of New Mexico.

Aug. 28, 1979.

Rehearing Denied Sept. 11, 1979.

Paul J. Matteucci, Edward L. Matteucci, Albuquerque, for defendant-appellant.

G. Richard Mantlo, Lamb, Metzgar & Lines, Albuquerque, for plaintiffs-appellees.

## OPINION

WALTERS, Judge.

Plaintiff's insurance company and its insured sought subrogation recovery against Frank Duran, owner, and his brother Joe Duran, driver, for damages to Chavez's car and personal injuries sustained by the Chavezes in an automobile accident. Following a non-jury trial, judgment of $4,022.63 was entered against Frank Duran.

Appellant raises two points for reversal: (1) the trial court erred in concluding that appellant was negligent; and (2) the court erred in concluding that appellant was liable for the negligence of his brother based upon the Family Purpose Doctrine.

Application of the Family Purpose Doctrine upon the court's findings of negligence in this case presents matters of first impression and requires a summary of the facts.

Joe Duran, 56 or 57 years old, lived "off and on" with his brother Frank, 49, and was at his home "sometimes." Frank testified that Joe "stays with a friend over in Los Lunas, . . . and then [with another friend] . . . he's away; he comes and goes. I can't keep track of him." On the day of the accident, Frank and Joe left Frank's home where they had been drinking and went in Frank's car to a neighborhood bar. Both brothers became drunk. Frank spilled a can of beer at the bar and was asked to leave. Joe was playing pool at the time and wanted to finish his game, so Frank left the bar and fell asleep in the back seat of his car while he waited for Joe. When Joe came out, he removed the car keys from the sleeping man's pocket and while driving Frank's car, ran a red light and collided with the Chavez car.

Joe Duran's driver's license had been permanently suspended, and Frank Duran had never allowed his brother to drive his car. He did not give Joe permission to drive, or his keys, on the date of the accident.

The critical findings and conclusion upon which judgment was grounded are:

(Finding 10): That the proximate cause of the injury and damage sustained by the plaintiff and members of the plaintiff's family was the negligence of Joe L. Duran and Frank Duran.

(Finding 11): That in addition to his own negligence, Frank Duran is responsible for the negligence of Joe L. Duran as

members and residents of the same household and is liable for all of the plaintiff's damages and the damages to the plaintiff's family.

(Conclusion 6): That Frank Duran is also liable for the negligence of Joe L. Duran, pursuant to the Family Purpose Doctrine.

■ Appellant attacks Finding 10 as unsupported by the evidence, and insofar as Frank Duran's causal negligence is concerned, we agree. The issue of the owner's negligence in circumstances of vehicular "theft" must be governed by the analogous law of *Bouldin v. Sategna,* 71 N.M. 329, 378 P.2d 370 (1963). There the owner, in violation of statute, left his car unattended without removing the keys. Our Supreme Court held that he could not have anticipated that the car would be stolen nor reasonably have foreseen that theft and a subsequent accident would be "a natural or probable result" of leaving the car unlocked with the keys in the ignition. If the susceptibility of the vehicle to theft and the intervening negligence of the thief in *Bouldin* could not be foreseen under the circumstances present there, they are certainly less foreseeable in this case where the owner retained the keys on his person and remained in the car.

The proximate cause of the injury and damage to plaintiffs was Joe Duran's unforeseeable intervening negligence. *Bouldin, supra.*

Holding that Frank Duran was not causally negligent, however, does not relieve him of liability if the Family Purpose Doctrine applies. "The maintenance of the vehicle ' * * * for the general use and convenience of [the] family * * *' *is essential to liability* under the doctrine." (Our emphasis.) *Peters v. LeDoux,* 83 N.M. 307, 491 P.2d 524 (1971). Such evidence is totally lacking in the instant case. There is nothing at all in the record to suggest that the vehicle was for anyone's use and convenience other than Frank's.

■ The Family Purpose Doctrine is grounded on principal-agent, master-servant principles. *Pavlos v. Albuquerque Natl. Bank,* 82 N.M. 759, 487 P.2d 187 (Ct.App.

1971); *Burkhart v. Corn,* 59 N.M. 343, 284 P.2d 226 (1955); *Boes v. Howell,* 24 N.M. 142, 173 P. 966 (1918). It is positioned in the Civil U.J.I. volume under "Chapter 4. Agency, Master and Servant." *See* U.J.I. 4.9.

The New Mexico master-servant cases resolve liability of the master upon the scope of the servant's authority. Where there was no authority, even though the opportunity for abuse was present by reason of the master's making the opportunity available, the master has been held not liable. *Fernandez v. Lloyd McKee Motors, Inc.,* 90 N.M. 433, 564 P.2d 997 (Ct.App.1977); *Morris v. Cartwright,* 57 N.M. 328, 258 P.2d 719 (1953); *Miller v. Hoefgen,* 51 N.M. 319, 183 P.2d 850 (1947).

Prior to adoption of the Rules of Evidence for the courts of New Mexico in 1973, any *presumption* of consensual agency in the driver when the owner was also present in the vehicle was rebutted when evidence to the contrary was presented. *State Farm Mut. Auto Ins. Co. v. Foundation Reserve Ins. Co.,* 78 N.M. 359, 431 P.2d 737 (Ct.App. 1967). Frank Duran denied granting consent, and that testimony was uncontradicted.

Likewise, it was held that any presumption of consent to the driver and thus agency in the driver, by proof of ownership in the defendant, "ceases to exist immediately upon the introduction of credible and substantial evidence which would support a contrary finding." *Payne v. Tuozzoli,* 80 N.M. 214, 453 P.2d 384 (Ct.App.1969); *Morris v. Cartwright, supra. Silva v. Traver,* 63 Ariz. 364, 162 P.2d 615 (1945), was cited in *Morris, supra,* for the proposition that "[w]henever evidence contradicting a legal presumption is introduced the presumption vanishes." At 57 N.M. 332–333, 258 P.2d 722, *Morris* addressed the fragile effect of the presumption that the driver's agency attached to proof of the defendant's ownership, and noted:

It must be conceded that proof or admission of ownership creates a presumption that the driver of a vehicle causing dam-

ages is the servant of the owner and using the vehicle in the master's business, and this presumption is sufficient in the absence of evidence to the contrary to support a verdict. But it is only a presumption of law and not evidence. When contradictory evidence is introduced, the presumption disappears as though it had never existed.

The law of New Mexico was observed to be the same as that quoted, in *Morris*, at 57 N.M. 333–334, 258 P.2d 723, from *Gallagher v. Holcomb*, 172 Okl. 1, 44 P.2d 44, 49 (1935):

> And where the defendant . . . establishes that the son, on the occasion of the injury, was not driving the parent's car with the consent or approval of the latter, or in his business or interest, and was not then acting as his servant or agent, *and such evidence is uncontradicted by rebuttal evidence, and the witness is in no way impeached, the presumption of authority previously existing is overcome, the absence of authority on the particular occasion is established, and no question of fact as to agency at the time of the accident remains.* (Our emphasis.)

■ The disappearance of the presumption upon the presentation of contrary evidence was eliminated, however, when the 1973 Rules of Evidence were adopted. Rule 301 now provides that, generally, "a presumption imposes on the party against whom it is directed the burden of proving that the nonexistence of the presumed fact is more probable than its existence." Thus the inference may continue to operate in an evidentiary sense even after introduction of evidence tending to establish the contrary, and may sufficiently influence the trier of facts to conclude that the presumed fact does exist.

The Commentary of the Advisory Committee which prepared and submitted the Rules to the Supreme Court instructs us, however, that "[p]resumptions governed by this rule are given the effect of placing upon the opposing party the burden of establishing the nonexistence of the presumed fact." Defendant met the burden with positive evidence that Joe Duran did not have and never had had his permission to use or drive his car. However, as the factfinder, the trial court could have disbelieved defendant. The findings and conclusions do not reflect, however, that the court doubted defendant's credibility—they are expressive of its view of Frank Duran's foreseeable negligence in making it possible for Joe Duran to obtain his keys and drive his vehicle. We have already discussed the impropriety of that approach.

■ In *Pesqueira v. Talbot*, 7 Ariz.App. 476, 441 P.2d 73 (1968), a review of the Family Purpose Doctrine was undertaken and the analysis given it by numerous jurisdictions, as well as by Arizona, led to the following formulation of the elements that must be shown for its use:

> [T]he substantial requisites for the application of this anomalous doctrine . . . may be stated thus: there must be a family with sufficient unity so that there is a head of the family, the motor vehicle responsible for the injury must have been one "furnished" by the head of the family to a member of the family and this vehicle must have been used . . . . with the implied or express consent of the head of the family for a family purpose.

Other courts have defined "family" to mean that one or more persons live together in the same household, are supported by the head of the family in whole or in part, are dependent upon him for that support, and that the head is under a natural or moral obligation to render such support. *Manning v. Hart*, 255 N.C. 368, 121 S.E.2d 721 (1961); *Piechota v. Rapp*, 148 Neb. 443, 27 N.W.2d 682 (1947); *Jones v. Golick*, 46 Nev. 10, 206 P. 679 (1922). We are in accord with the foregoing statements as adjunctive to the requirements stated in *Peters v. Le-Doux, supra*.

■ Although this was not a jury trial, we note that the "Directions for Use" following U.J.I. 4.9 emphatically caution: "This instruction is not to be used if a member of the family took the vehicle contrary to instructions." The New Mexico

law is, of course, the same for jury and non-jury trials. See *Peters v. LeDoux, supra*, 83 N.M. at 309–310, 491 P.2d 527. Under the definition of family, Joe Duran was not a family member, and the direct evidence in the case is that he had no permission or consent of defendant to ever use defendant's car.

[redacted] Applying the principles stated to the facts of this case, it is clear that Joe Duran's sole negligence was the intervening and proximate cause of the accident and injuries. Frank Duran cannot be held responsible under the Family Purpose Doctrine in the absence of evidence that Joe was a member of a family as legally defined in these circumstances, and had either implied or express consent to use a vehicle maintained by the head of the family for the "general use . . . pleasure and convenience of himself and his family." *Peters v. LeDoux, supra.* Simply because Joe sometimes lived with Frank and was Frank's brother are insufficient facts upon which to call up liability under the Family Purpose Doctrine.

> The mere existence of a family relationship between a negligent driver and the vehicle owner does not automatically present a case where the issue of the family purpose doctrine will be found.

Annot., Modern Status of Family Purpose Doctrine with Respect to Motor Vehicles, 8 A.L.R.3d 1191, at 1195.

The judgment is reversed and the trial court is directed to dismiss plaintiff's complaint. Costs of appeal are to be assessed against appellee.

IT IS SO ORDERED.

LOPEZ, J., dissenting.

ANDREWS, J., concurring in result.

LOPEZ, Judge (dissenting).

I respectfully dissent. Under point (1), appellant challenges the court's finding of fact no. 10 and conclusions of law nos. 4 and 5 which read:

> 10. That the proximate cause of the injury and damage sustained by the Plaintiff and members of the Plaintiff's family was the negligence of Joe L. Duran [appellant's brother] and Frank Duran [appellant].
>
> 4. That Joe L. Duran and Frank Duran breached their duty of reasonable care.
>
> 5. That Joe L. Duran and Frank Duran were therefore negligent.

In challenging the court's finding, appellant necessarily argues that it is not supported by substantial evidence. It is well established in New Mexico that a trial court's finding will not be disturbed on appeal if it is supported by such evidence. *Montoya v. Travelers Ins. Co.*, 91 N.M. 667, 579 P.2d 793 (1978); *Stewart v. Barnes*, 80 N.M. 102, 451 P.2d 1006 (Ct.App.1969). Substantial evidence is relevant evidence which a reasonable person might find adequate to support a conclusion. *Shirley v. Venaglia*, 86 N.M. 721, 527 P.2d 316 (1974). In deciding whether a finding has substantial support, we must view the evidence in the light most favorable to support the finding. *Platero v. Jones*, 83 N.M. 261, 490 P.2d 1234 (Ct.App. 1971). Additionally, in determining the sufficiency of the evidence, a reviewing court will consider only that evidence and those reasonable inferences to be drawn therefrom which support the finding. Any evidence unfavorable to the finding will not be considered. *Stewart v. Barnes, supra.* We will not weigh the evidence or determine the credibility of witnesses. *Platero v. Jones, supra.* The trier of facts is the sole judge of this credibility and the weight to be given the testimony of a witness. *State ex rel. Reynolds v. Lewis*, 84 N.M. 768, 508 P.2d 577 (1973).

The challenged finding and conclusions are based upon the decision that appellant was negligent. Accordingly, in order to determine whether the finding is supported by substantial evidence and the conclusions are supported by the findings, it is first necessary to ascertain upon what legal theory the court based this decision. In this jurisdiction, a person is liable for "such consequences as were or should have been contemplated or might have been foreseen."

*Valdez v. Gonzales*, 50 N.M. 281, 288, 176 P.2d 173, 177 (1946). This principle has been called the "foreseeability" rule. *Valdez v. Gonzales, supra.* It is expressed in U.J.I. 12.1 as follows:

. . . . .

An act to be negligent must be one which a reasonably prudent person would foresee as involving an unreasonable risk of injury to himself or to another and which such a person in the exercise of ordinary care would not do.

. . . . .

The record discloses that it was partly upon this rule that the court based its decision that appellant was negligent. Therefore, given the evidence contained in the record and the above stated rules of appellate review, the issue for decision is whether it was reasonable for the court to infer that appellant should have reasonably foreseen his actions as involving an unreasonable risk of injury to appellees. Appellant argues that it was not reasonable for the court to infer that he should have foreseen his brother's driving the car and becoming involved in an accident. Appellees contend that it was reasonable for the court to make such an inference. I agree.

The evidence most favorable to the court's finding is as follows. Appellant and his brother were living together at appellant's house on the day of the accident. They began drinking at appellant's house and then drove his car to a bar some distance from the house. Appellant got drunk and observed his brother in a drunken state. After being asked to leave the bar, appellant went to his car and passed out in the back seat. Appellant's brother took the keys of the car from his pocket and while driving the car, the brother was involved in the accident which is the subject of this litigation.

I conclude that, from this evidence, it was reasonable to infer that appellant should have foreseen his brother's taking the keys out of his pocket and driving the car in an effort to take both of them to appellant's house. Because appellant observed his brother in a drunken state, I further con-

clude that appellant should have foreseen his brother's actions as creating an unreasonable risk of harm to persons, such as appellees, driving on the public highways. Additionally, because these consequences were of such a nature, I conclude that appellant's conduct was the proximate cause of appellees' damages. *Terrel v. Duke City Lumber Company, Inc.*, 86 N.M. 405, 524 P.2d 1021 (Ct.App.1974), *modified*, 88 N.M. 299, 540 P.2d 229 (1975). Finally, I conclude that a reasonable person might find the above inference adequate to support the court's finding. Accordingly, I would hold that the court's finding is supported by substantial evidence and that the court did not err in concluding that appellant was negligent.

In arriving at this holding, I am aware that our Supreme Court held in *Bouldin v. Sategna*, 71 N.M. 329, 378 P.2d 370 (1963), that the theft of a car is not a natural event to be foreseen by a person who is negligent in leaving his car unattended with the key in the ignition. The majority relies primarily upon this holding as support for its decision that the proximate cause of appellees' damages was the unforeseeable intervening negligence of appellant's brother. I believe the facts in the present case are sufficiently different to make *Bouldin* inapplicable. In that case, the thief was unknown to and had no connection with the defendant. Based upon these facts, the decision that the theft of the car was an efficient intervening cause logically followed. However, in the present case, the "thief" was appellant's brother, was living with appellant on the day of the accident and had gone drinking with appellant at a bar some distance from appellant's house. The special familial relationship and the fact that appellant and his brother were temporarily living together make the "theft" of appellant's car foreseeable. Because these facts are qualitatively different, I do not agree that the issue of appellant's negligence "must be governed by the analogous law" of *Bouldin*. Accordingly, I would hold that the court did not err in concluding that appellant was negligent.

In reaching this decision, I am also aware that appellant testified that he never allowed his brother to operate his car and that his brother's license to drive had been revoked. In addition, I am aware that appellant testified that he could not have foreseen his brother's taking the keys of his car and driving it. However, I would remind appellant that, as a reviewing court, we only consider that evidence and those reasonable inferences to be drawn therefrom which support the finding. We do not consider any evidence unfavorable to the finding. *Stewart v. Barnes, supra.* I would also remind appellant that the court is the sole judge of his credibility and the weight to be given his testimony. *State ex rel. Reynolds v. Lewis, supra.* Given these principles, I can only conclude that the court was correct in concluding that appellant was negligent. Furthermore, even if we could consider appellant's testimony, I agree with appellees' observation that, given the drunken state of appellant's brother, it might be expected that the brother would disregard the facts that (1) appellant never allowed him to drive the car, and (2) he did not have a driver's license. Finally, I do not agree with appellant's claim that the car could have been driven by a third party named Reuben Miera. The record does not indicate that Miera had a valid driver's license or that he was in a sober state.

Because I would hold that the court did not err in concluding that appellant was negligent, I do not reach appellant's second point for reversal.