## 5761.   ELLIS, guardian, *v.* HEWITT.

1. Where a woman has been lawfully divorced from her husband, and the court has awarded to her the custody of their minor child, and she has since had the entire care and control of the child, the father failing to contribute to its support and abandoning it altogether and disappearing to parts unknown, she has a legal right to its services and earnings, and may recover for a tortious injury to the child which deprives her of such services; and a corresponding legal obligation rests upon her to support the child in accordance with her means and ability.

2. When such a mother becomes non compos mentis and has been committed to the State Sanitarium, her individual estate in the hands of her guardian is responsible for necessaries furnished for the support of the child.

3. In such a case the fact that under the Civil Code, § 1607, the State may be entitled to a lien, which is not foreclosed or asserted, against the property of an insane person in its charge, will not prevent one who has furnished the minor child with necessaries, proper to its condition, from recovering therefor in a proceeding brought against the guardian of the insane person, the State not being in any way a party to the proceeding.
                    DECIDED FEBRUARY 3, 1915.

Complaint; from municipal court of Atlanta.   April 17, 1914.

*Evins, Spence & Moore,* for plaintiff in error.

*Hewlett, Dennis & Whitman,* contra.

WADE, J.   Julia B. Hoyal and her husband were divorced when their infant daughter was about one year of age, and the court then awarded the custody of the child to her, and the child remained continuously in her care and custody from that time up to a comparatively recent date, when Mrs. Hoyal was committed to the State Sanitarium.   The father is not a resident of Georgia, and his present whereabouts are unknown.   He has never in any way

contributed to the support of this daughter (now about 15 years old) since her infancy, but she has been entirely dependent upon her mother, having no estate of her own.    Frampton E. Ellis, county administrator, was duly appointed guardian of the estate of Mrs. Hoyal, on account of her insanity, and is now guardian of that estate, amounting (according to the admission of the defendant) to more than $1,500.    Mrs. Eva C. Hewitt, the sister of Julia B. Hoyal, furnished the child with board and clothing during the months of September, October, and November, 1912, and October, November, and December, 1913, and January, 1914, and such board and necessaries were agreed by both parties to be reasonably worth $20 per month.    Mrs. Hewitt brought suit in the municipal court of Atlanta against Ellis, as guardian for Mrs. Hoyal, to recover the value of the board and necessaries so furnished, and the court rendered judgment in favor of the plaintiff for $140.    The defendant moved for a new trial, on the ground that the judgment was against the law and evidence, and also incorporated in the motion (as is allowable under the provisions of the act establishing the municipal court of Atlanta, Acts of 1913, p. 145) certain grounds based upon two points precisely raised by a demurrer which had been overruled, to·wit:    (1) that the movant is the guardian of an insane married woman, and under the law her property would not be subject to the debts of her minor child for necessaries; and (2) that the State of Georgia has, under the law, a prior lien upon the property in the hands of the defendant.    The motion for a new trial was overruled, and the defendant brought the case to this court for review.    As stated in the brief of counsel for the plaintiff in error, "the question of the father's liability in this case is eliminated, as it is admitted that the insane mother and the father have long since been divorced, that the custody of this child has been awarded to the mother, and that the father is in parts unknown."

1, 2.    The first question to be decided is whether or not the estate of a divorced woman, who is a lunatic committed to the State Sanitarium, is liable for necessaries furnished to her minor child, where her former husband, the father of the child, is in parts unknown, and has contributed nothing to the support of the child and exercised no control over it since the granting of the divorce.    It appears to us that, under the admitted facts, the father

has lost all parental power over the child, and all right to its services or the proceeds of its labor. Under the Civil Code, § 3021 (3); the father may lose his parental power "by the failure of the father to provide necessaries for his child, or his abandonment of his family.". Where the father abandons his family and fails to provide necessaries for his child, left in the care and custody of the mother, she is entitled to the services and earnings of the child. *Amos* v. *Atlanta Railway Co.,* 104 *Ga.* 809 (31 S. E. 42); *Savannah, Florida & Western Ry. Co.* v. *Smith,* 93 *Ga.* 742 (21 S. E. 157). Even one standing in loco parentis is entitled to recover for the value of the services of a minor child (*City of Albany* v. *Lindsey,* 11 *Ga. App.* 573, 75 S. E. 911), and has been held to be "subject to the liabilities of an actual parent." Williams *v.* Hutchinson, 3 N. Y. 312 (53 Am. D. 301). Admitting then that where the father abandons his family the mother is entitled to the services and earnings of their child, it would appear that a resulting duty to maintain and support the child would rest upon her, and that where she has a separate estate, her estate would be properly chargeable for necessaries supplied to the child, suitable to its condition in life, and this notwithstanding "the father is not relieved from his legal obligation for the support of the child" (*Hall* v. *Hall,* 141 *Ga.* 361, 80 S. E. 992), where a decree of divorce awards her its custody and fails to determine the question of its support. The right of a father to the custody, and the value of the labor and services, of his minor child is said (2 Kent's Com. 193) to arise as a consequence of his obligation for its support and maintenance. And in Nightingale *v.* Withington, 14 Mass. 272 (8 Am. D. 101), it is said: "The father, and in case of his death the mother, is entitled to the earnings of their minor children. This right must be founded upon the obligation of the parent to nurture and support their children; which obligation is compensated by a right to their services." In *Newton* v. *Cooper,* 13 *Ga. App.* 458 (79 S. E. 356), it was held that a mother who had the custody and care of a minor child who had been abandoned by his father was entitled to the services of the child and to the proceeds of the child's labor, and where the mother sued for the value of the child's services, the employer had the right to set off the value of necessaries supplied by him to the minor child during the term of his employment. In this case there is no evidence that the child was

emancipated by any voluntary act of the mother, and no provision in our statute law declares that a child becomes emancipated on account of insanity of the parent. Under the facts in this case, the earnings of the child would, under the law of this State, belong to the mother, if the mother were sane, and we do not·see why the child's filial or legal obligation should be lighter on account of the unfortunate affliction which has overtaken the mother. So also, the resulting or concurrent abstract obligation on the part of the mother, to support and maintain the child to whose services and earnings she is entitled, has apparently not been destroyed or lessened because of the insanity of the mother; and where it appears that the mother has an estate in her own name, there is no reason why the abstract obligation should not find concrete expression.

To approach the subject from another direction, it has been held in *Atlanta & West Point Railroad Co.* v. *Venable,* 65 *Ga.* 55, 56, that "the word 'parent' is connected with no trade and is not a word of art; it means ordinarily mother as well as father, and must be so construed." "Parent" has often been held to include the mother. Words & Phrases, vol. 6, p. 5173. The legal duty of a parent to provide for the maintenance, protection and education of minor children is too well established to require more than casual mention. See 1 Blackstone, Com., chap. 16; *Nicholson* v. *Spencer,* 11 *Ga.* 607-610, 611. "We learn . . , in our elementary lessons, that parents are legally and in duty bound to maintain their infant children." *Burns* v. *Hill,* 19 *Ga.* 22, 25. Mrs. Hoyal is the "parent" of Minnie Hoyal, the minor child, and the custody of the child was awarded to her by the court; the father long since abandoned the child and thereby lost his parental control and his right to the child's services or earnings; the mother would be entitled to recover the value of the services of the child under contract or on account of injury inflicted upon the child; as a consequence of her legal right to control the child and enjoy the services and earnings of the child, the mother is under a corresponding duty to maintain and provide for the child, if it is in her power to do so; the insanity of the mother may release her from the obligation of personal service in behalf of her minor child, but will not discharge her estate from the legal obligation for necessaries supplied to the child.

3.   The second question raised by the motion for a new trial is

whether or not the fact that, under the law, the State of Georgia has a lien upon the property of an insane person committed to the State Sanitarium would in this case bar the plaintiff from recovering judgment against the estate in the hands of the guardian of Mrs. Hoyal. There is no evidence to the effect that the State has asserted any lien against the property of Mrs. Hoyal or is now endeavoring to set up any such lien; and, in the absence of any steps to enforce such a lien, the guardian would be protected from liability in paying just charges against the estate of his insane ward, which have been legally established. If it were otherwise, the commitment to the State Sanitarium of one possessing a large estate, and correspondingly large outstanding obligations, would defeat the payment of his lawful debts and work hardship on innocent creditors. Furthermore, if, on account of an unasserted lien to which the State may be entitled under the Civil Code, § 1607, against property of an insane person committed to the State Sanitarium, legal claims against the insane person can not be adjusted, for what reason would it be necessary to appoint a guardian for such a person, except to collect and hold the assets of the estate, to ultimately pay off the State's lien, or against the day when the insane person may be restored to sanity and require a reckoning? *Judgment affirmed.*