DISTRICT COURT OF THE SECOND JUDICIAL DISTRICT
OF THE COUNTY OF UNION.

CARMINE CICCHINO, LANDLORD, v. SAM BIARSKY,
TENANT.

Decided September 1, 1948.

For the landlord, *Joseph L. Kaplan.*

For the tenant, *Robinson & Morris.*

FULOP, D. C. J.   This is a suit by a landlord to obtain possession of a six-room apartment and part of the basement in a two-family house at 215 Conklin Avenue, Hillside, New Jersey.   The tenancy is from month to month, terminated by a two months' notice to a rent day.   The landlord seeks to obtain possession of the premises for the use of a foster daughter who is living with him and is about to be married.

The foster daughter is known as Louise Rainone Cicchino, although her father's name is Carmine Rainone.   Her mother died in 1932 when Louise was four years of age and she has lived with Carmine Cicchino, the landlord, as a member of his household ever since.   Cicchino has acted as parent to Louise in all respects during the intervening sixteen years.

The tenant contends that Louise is not a member of Cicchino's immediate family and that the landlord is therefore not permitted to recapture the apartment for her use under the provisions of section 209 (a) (2) of the Housing and Rent Act of 1948, P. L. 464, 80th Congress, chapter 161—2nd session, 50 *U. S. C. A. Appendix,* § 1899 (a) (2), which provides in part as follows:

"No action or proceeding to recover possession of any controlled housing accommodations with respect to which a maximum rent is in effect under this title shall be maintainable by any landlord against any tenant in any court, notwithstanding the fact that the tenant has no lease or that his lease has expired, so long as the tenant continues to pay the rent to which the landlord is entitled unless   *   *   *"

"(2) the landlord seeks in good faith to recover possession of such housing accommodations for his immediate and personal use and occupancy as housing accommodations, or for the immediate and personal use and occupancy as housing accommodations by a member or members of his immediate family,   *   *   *."

Counsel for the tenant quotes the report of the joint com-- mittee of Congress which formulated this legislation, as giv-- ing the following definition of the words "immediate family":

"Spouse, father, mother, son, daughter, brother, sister, grandfather, grandmother, great-grandmother, great-grand-father, grandson, granddaughter, son-in-law, daughter-in-law, brother-in-law, sister-in-law, father-in-law, mother-in-law."

It is said that this definition is binding upon this court. Chief Justice Case in *Flagg* v. *Johansen* (*Supreme Court,* 1940), 124 *N. J. L.* 456; 12 *Atl. Rep.* (*2d*) 374, 376, held that:

"The imputed intent of any single member or even of a. minority bloc, of the legislature has no significance in judicial construction."

He quoted with approval from the opinion of Chancellor Zabriskie in *Keyport Steamboat Co.* v. *Farmers Transporta-- tion,* 18 *N. J. Eq.* 13, 24, as follows:

"The intention of the draftsman of an act, or the individual members of the legislature who voted for and passed it, if not properly expressed in the act, it is admitted, has nothing to do with its construction; the only just rule of construction, especially among a free people, is the meaning of the law as expressed to those to whom it is prescribed, and who are to be governed by it. If the legislator who enacted the law should afterwards be the judge who expounds it, his own intention, which he had not skill to express, ought not to govern."

Chief Justice Beasley in *Sooy* ads. *State,* 38 *N. J. L.* 324, held:

"In construing laws, the court is bound by legal rules, and in order to discover legislative intent, we must look to the statutory language alone, in its application to its subject. We can not go for such purpose to the journals or debates of the legislature, nor to our own memory; the statute must speak for itself, and we cannot add a syllable to what it speaks."

It appears, therefore, that the report of the Congressional committee is not binding, although—

"In the construction of a statute, it is not amiss to ascertain the prevailing climate of the legislative opinion at the time of its enactment and to accord it some deference." V. C. Jayne in *Havens* v. *Mohme Aero Engineering Corp.* (1944), 135 *N. J. Eq.* 386 (at *p.* 396) ; 39 *Atl. Rep.* (*2d*) 108, 115.

"Family" has many definitions. Among others, the Merriam Webster gives the following:

"The body of persons who live in one house, and under one head or manager; a household, including parents, children, and servants, and as the case may be, lodgers or boarders: \* \* \*."

Also:

"A group composing immediate kindred, esp., the group formed of parents and children, constituting the fundamental social unit in civilized societies."

Neither of these definitions seems wholly adequate. We must look to the avowed purpose of the statute. The original regulation was under the Emergency Price Control Act of 1942, 50 *U. S. C. A. Appendix,* §§ 901, *et seq.* The declared purpose was "to stabilize prices and to prevent speculative, unwarranted, and abnormal increases in prices and rents; to eliminate and prevent profiteering, \* \* \*." The Price Control Extension Act of 1946 and the Housing and Rent Act of 1947, reaffirm these purposes, but, in 1947, the Congress indicated a desire to terminate the controls as rapidly as possible. Sections 201 (a) and (b), 50 *U. S. C. A. Appendix,* §§ 1891 (a, b).

The 1947 statute allowed eviction only for personal occupancy by the landlord. By the 1948 amendment, the field was broadened as above quoted.

The trend of Congressional intent is toward less regulation. The purpose of regulation is to prevent rent gouging. The limitation upon the free use of propety by the owner is justified only by the emergency and only to the extent necessary to prevent excessive profiteering and chaos.

The Fifth Amendment to the Constitution of the United States provides: "nor shall private property be taken for public use without just compensation."

If the language of the statute permits, then it must be so

construed as to allow the owner of property to do what he will with his property, subject only to such restrictions as are essential to prevent the evil which the act seeks to prevent.

The definition of members of the immediate family taken from the report of the Congressional committee includes six "in-laws." A daughter-in-law is, by definiton, not related by blood to her father-in-law. Apparently blood relationship is not necessary to create membership in the immediate family.

Neither is legal relationship necessary. A daughter or son-in-law has no legal relationship to the parent of his or her spouse. Neither inherits property from the other in case of intestacy. There is no legal duty to support.

It is interesting to note, although perhaps not relevant, that the ancient custom of fostering in Ireland "was held to be a stronger alliance than blood, and the foster children participated in the fortunes of their foster fathers." *Black's Law Dictionary* (*2d ed.*).

Webster's New International Dictionary (1922) defines:

"foster mother or father—a woman or man who has performed the duties of a parent to the child of another by rearing the child as own child."

And

"foster child * * * one who has received the care of a foster parent."

"foster brothers or sisters—those reared as children in the same family, or nursed at the same breast, but not of the same parentage."

It is not necessary, for the purposes of this case, that an all inclusive definition of immediate family be formulated. It is sufficient to determine that a foster child reared from infancy to womanhood by the foster parent in his home and still a member of his household, is a member of his immediate family within the meaning and intent of the statute.

In the argument, the foster child was referred to by both sides as the niece of the landlord. However, no proof of such relationship has been offered.

No other question as to the right of the landlord to possession has been raised in the case and no other point is therefore decided.

Judgment for possession may be entered. In the event that the tenant desires to review this judgment, the issuance of the warrant will be withheld during the proceedings to review, provided they are immediately instituted and diligently prosecuted. If no review is sought or obtained, the parties may present their views as to the date for the issuance of the warrant either in writing or on any court day on notice.