*In re* JAMESON ICE, a Minor.—(HOWARD ICE, Petitioner-Appellant, *v.*
THE DEPARTMENT OF CHILDREN AND FAMILY SERVICES,
Respondent-Appellee.)

Third District No. 75-120

Opinion filed February 6, 1976.

Robert C. Shearer, of Rock Island, for appellant.

David DeDoncker, State's Attorney, of Rock Island, for appellee.

Mr. JUSTICE BARRY delivered the opinion of the court:

The petitioner, Howard Ice, father of Jameson Ice, brought an action in the Circuit Court of Rock Island County to obtain custody or visitation of his child. The trial court denied the relief sought and further found and declared Howard Ice to be an unfit person. The court then terminated his parental rights and empowered a guardian to appear and give his consent to the adoption of Jameson. The petitioner appeals from the trial court's adverse order and presents only one issue for review: Whether the trial court ruled correctly in denying the relief sought and by finding Howard Ice to be unfit thereby allowing his

parental rights to be terminated and a guardian appointed to give his consent to the adoption of Jameson.

Jameson Ice was born on July 15, 1969, to Bobbie Donth Ice who was then married to Peter Donth. In a subsequent divorce proceeding the decree specifically excluded Jameson as a child of the marriage of Peter and Bobbie Donth. After the divorce the putative father of Jameson, Howard Ice, married Bobbie Donth. Their marriage was short-lived and also ended with a divorce on November 20, 1970. In that divorce proceeding brought by Howard Ice he did not acknowledge he was the natural father of Jameson Ice. It does not appear that Howard Ice ever adopted the child. It appears custody of the child then remained in Bobbie Ice. Neither divorce decree provided any support payments in Jameson's behalf.

As as result of his mother's suicide attempt in April of 1971, a petition for neglect was filed on behalf of Jameson. On May 4, 1971, he was found to be neglected, made a ward of the court, and placed with the Department of Children and Family Services. That court order stated "that said minor's environment is injurious to his welfare." Howard Ice was made a party to these juvenile proceedings. Not until April 5, 1974, did Howard Ice file his petition seeking custody or visitation. Only on May 4, 1974, did he refute his earlier "denial" of fathering Jameson by acknowledging paternity in answer to Bobbie Ice's paternity complaint filed in 1974.

At the hearing on his petition from which this appeal arose, the trial court found that it would be in the best interests of the minor child if the relief sought by Howard Ice's petition be denied. No challenge is made upon the validity of the original order adjudging Jameson a ward of the court because he was a neglected minor. Nor has any error been alleged with respect to the original dispositional order placing Jameson with the Department of Children and Family Services as provided for in the Juvenile Court Act.

■■ Upon a petition for restoration of the minor to the custody of a parent following an adjudication that the child is neglected and a ward of the court, the measuring criteria which must be used by the trial court is the best interests of the minor. The original order depriving the parents of Jameson Ice of legal custody is a continuing order and is subject to modification. That order is res judicata only as to the facts which existed at the time the order was entered. The question of whether a parent has been neglectful in the past may be relevant to whether a parent has been rehabilitated sufficiently to have the present ability to properly care for the child. (See *In re Overton*, 21 Ill. App. 3d 1014, 316 N.E.2d 201 (1974).) Certainly the issue of

the fitness of a parent or legal guardian is a proper inquiry when the court is considering the best interests of the child at a dispositional hearing.

In considering the best interests of the child and the dispositional alternatives, the trial court concluded that terminating petitioner's parental rights and empowering a guardian to give his consent to adoption would best serve those interests. That order empowering a guardian to consent to adoption and terminating parental rights must be based on the consent of the parents or findings of unfitness as defined in the Adoption Act. The applicable language of that statute provides as grounds for unfitness "(b) Failure to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare;  *  *  * (d) Substantial neglect of the child if continuous or repeated." Ill. Rev. Stat. 1973, ch. 4, §§9.1—1(D)(b)(d).

■■ We also here appreciate that a natural parent has a superior right to the custody of his child, and that the parents of an illegitimate child are included in the definition of "parent" in the Adoption Act. (Ill. Rev. Stat. 1973, ch. 4, §9.1—1(E).) We therefore perceive that parents of an illegitimate child have certain residual rights which cannot be taken away without a due process hearing. *Stanley v. Illinois,* 405 U.S. 645, 31 L. Ed. 2d 551, 92 S. Ct. 1208 (1972); *People ex rel. Slawek v. Covenant Children's Home,* 52 Ill. 2d 20, 284 N.E.2d 291 (1972).

Such a hearing was held in this case. After the evidence had been presented the trial court stated "I'm not impressed at all with Howard Ice. There's a finding here of neglect in 1971, and in the divorce proceeding there is what the court finds to be a substantial denial of paternity. Plainly and simply Mr. Ice bastardized the child. The court finds he has made not much [*sic*] attempt to support the child and no money to support until August of 74, and he testified he didn't do it because nobody told him so. The court doesn't feel a father should have to be told he owes support." Petitioner's conduct consisted not only of a denial of paternity and lack of support, but an inexcusable lack of interest, concern and responsibility for his son's welfare within the statutory definition of unfitness. Contrary to the petitioner's claim that the finding of unfitness was against the manifest weight of the evidence, we are convinced that the petitioner's conduct was of a culpable nature and that clear and convincing proof of his unfitness was supported by the evidence presented. Howard Ice was found to have substantially neglected the child between November 20, 1970, and April 5, 1974, and to have failed to maintain a reasonable degree of interest, concern, or responsibility as to the child's welfare. A finding of unfitness of a

natural parent must be supported by clear and convincing proof and the correctness of that determination by the trial court will not be disturbed on appeal unless it is palpably against the manifest weight of the evidence. (*Thorpe v. Thorpe*, 48 Ill. App. 2d 455, 198 N.E.2d 743 (1964).) We believe the trial court's finding of unfitness with regard to Howard Ice was in accordance with the statutory standard set out in the Adoption Act (Ill. Rev. Stat. 1973, ch. 4, §9.1—1(D)), and was supported by clear and convincing evidence.

The legal authority cited to us by the petitioner is unconvincing when applied to the facts presented to us here. The father's lack of contact here is of a vastly greater degree than was found in the case of *In re Deerwester*, 131 Ill. App. 2d 952, 267 N.E.2d 505 (1971). Unlike the parent in *Deerwester*, Howard Ice was unable to demonstrate an excusable reason for his lack of contact, interest, and concern with his own child.

In view of the evidence showing Howard Ice to be unfit, and his lack of good health, we agree it was adequately shown that allowing visitation or any further contact between him and his son, Jameson, would be detrimental to the child.

We must give great weight to the result reached by the trial court in these matters and the superior opportunity there to hear and observe the witnesses. We believe the trial court reached the correct result.

Affirmed.

ALLOY and STOUDER, JJ., concur.