LEILANI LEE LINN, APPELLEE AND CROSS-APPELLANT, V.
ROLAND ROBERTS LINN, APPELLANT AND CROSS-APPELLEE.
286 N. W. 2d 765

Filed January 3, 1980.   No. 42539.

Regina C. Williams-Rotar of Ellick, Spire & Jones, for appellant.

William L. Monahan, for appellee. Ronald L. Schiltz and Thomas C. Prohaska of Reedy, Schiltz & Prohaska, guardians ad litem.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

HASTINGS, J.

This was a divorce action in which, after application by the guardian ad litem of the parties' minor child born November 8, 1971, the trial court terminated the parental rights of both parties under the provisions of section 42-364, R. R. S. 1943, enacted as a result of the passage of L.B. 169, Laws 1978. Respondent has appealed and petitioner has cross-appealed. Errors assigned are: (1) The unconstitutional vagueness of section 42-364; (2) that both were denied substantive due process, contrary to the Fourteenth Amendment to the Constitution of the United States, in that section 42-364 does not set forth specific and reasonable standards for termination; (3) that both were denied procedural due process due to inadequate notice and employment by the trial court of an improper standard of proof; (4) that both were denied equal protection of the laws, in contravention of the Fourteenth Amendment, in that section 43-202 (sic), R. R. S. 1943 (section 43-201 et seq.), requires notice of reasons for termination and the parents are judged by different standards than those under section 42-364; and (5) the evidence, in any event, was insufficient to justify termination.

Roland and Leilani Linn are 27 and 38 years of age, respectively, and were married on June 25, 1971. Their minor child Juanita was born on November 8, 1971, has cerebral palsy, but is ambulatory; however, she is supposed to use braces. She

has visual problems which with glasses make her correctable vision 20/50. Roland completed the seventh grade and has an I.Q. of 82. According to Dr. Jack Kenney, the court-appointed medical expert who examined him, Roland manifests "a willingness to be of help to his daughter and until the daughter outgrows Mr. Linn's intellectual capabilities, I feel that he could be an adequate parent." Leilani completed the eighth grade, and at the time of trial was trying to obtain her GED through enrollment in a survival skills program in Lincoln.

Although Roland has been unemployed on several occasions during the marriage and has held a variety of jobs, some temporary in nature, at the time of trial he was employed as a dishwasher and busboy for a restaurant, with a take-home pay of approximately $91 per week. Leilani apparently has not been employed during the marriage.

Various social agencies, including Child Protective Services, have worked with the parents since 1975 in an effort to provide a safe and adequate home for Juanita. In June of 1977, custody of Juanita was placed in the court with temporary possession in Roland. Later, upon a report that the child was found at home unattended, the court, in August of 1977, placed her in the temporary possession of the Douglas County Welfare department. In November joint custody was placed with the court and Douglas County Social Services. Juanita has been in a foster home since that time and has shown considerable improvement in her personal hygiene, eating habits, social skills, and school work.

There is considerable evidence that Leilani does not feel capable of coping with the child's raising and has expressed her desire on one or more occasions to "give up the child." On the other hand, Roland has always wanted to keep Juanita and, during the times when he was not working, did a creditable job. However, he has no real practicable program

for her long-term care. Everyone pretty well concedes that in the recent past both Roland and Leilani have been quite faithful in their allowed visitations with Juanita and a great deal of love and concern is expressed by and among all three of the parties. However, on the theory that adoption was a preferred alternative to long-term foster care, the parental rights were terminated, which gave rise to this appeal.

It is first necessary for us to address the constitutional question. It is conceded by all parties that no constitutional issues were raised in the pleadings or in the motions for a new trial. "The challenge to constitutionality of the statutes was not raised at the trial. Presentation of an issue for the first time in a motion for a new trial is not a ground for granting the motion. The constitutionality of a legislative act must be raised at the trial or it will be considered to be waived." State v. Norwood, 194 Neb. 595, 234 N. W. 2d 601 (1975). "However, this court reserves the right to note and correct plain error which appears on the face of the record in furtherance of the interests of substantial justice." Wittwer v. Dorland, 198 Neb. 361, 253 N. W. 2d 26 (1977). More specifically as to the problem at hand: "Considering the nature of this action and the fact that the custody of a minor child is involved, we have examined this record to determine whether or not there was plain error which, if regarded, would necessitate a reversal and, if disregarded, would impose unjust results or consequences." Smallcomb v. Smallcomb, 165 Neb. 191, 84 N. W. 2d 217 (1957).

Although under the circumstances of this case we would be entitled to refuse to consider the constitutional issues, because of their importance and the uniqueness of the facts of this particular case, we do not choose to do so. We therefore review the trial court's decision against the backdrop of the parents' claims of unconstitutional vagueness and denial of

substantive and procedural due process and equal protection. They all find their genesis in the Fourteenth Amendment to the Constitution of the United States, which prohibits a state from depriving any person of "life, liberty, or property, without due process of law" or from denying any person the "equal protection of the laws," and may be considered together.

It was well said by Mr. Justice McReynolds in Meyer v. Nebraska, 262 U. S. 390, 43 S. Ct. 625, 67 L. Ed. 1042 (1923), when, referring to the fact that there had been no exact definition of the liberty thus guaranteed, "Without doubt, it denotes * * * the right of the individual * * * to marry, establish a home and bring up children * * * and generally to enjoy those privileges long recognized at common law as essential to the orderly pursuit to happiness by free men." Within permissible limitations, of course, "the custody, care and nurture of the child reside first in the parents, whose primary ·function and freedom include preparation for obligations the State can neither supply nor hinder." Prince v. Massachusetts, 321 U. S. 158, 64 S. Ct. 438, 88 L. Ed. 645 (1944). This court itself has recognized that the right of a parent to maintain the custody of his or her children is a natural right subject only to the paramount interest which the public has in the protection of the rights of a child. State v. Metteer, 203 Neb. 515, 279 N. W. 2d 374 (1979). In State v. A. H., 198 Neb. 444, 253 N. W. 2d 283 (1977), we recognized that the due process command imposed by the Fourteenth Amendment translated into two basic requirements: "The statute's language must be sufficiently specific that persons of ordinary intelligence must not have to guess at its meaning. The statute must contain ascertainable standards by which it may be applied. This does not demand total absence of vagueness in a statute, but merely requires that a statute provide adequate notice of what conduct it requires or pre-

scribes [sic] as well as guidelines by which a violation of the statute may be fairly and nonarbitrarily determined.''

However, there we were dealing with section 43-202, R. S. Supp., 1974, now R. R. S. 1943, which gave the juvenile court jurisdiction over '' '(2) Any child under the age of eighteen years * * * (b) who lacks proper parental care by reason of the fault or habits of his parent, guardian, or custodian; (c) whose parent, guardian or custodian neglects, is unable, or refuses to provide proper or necessary subsistence, education, or other care necessary for the health, morals, or well-being of such child; * * * or (e) who is in a situation * * * dangerous to life or limb or injurious to the health or morals of such child; * * *.' Section 43-209, R. S. Supp., 1974, so far as material herein, provides: 'The court may terminate all parental rights between the parents or the mother of a child born out of wedlock and such child when the court finds such action to be in the best interests of the child and it appears by the evidence that one or more of the following conditions exist: * * * (4) The parents are unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs * * * which conduct is found by the court to be seriously detrimental to the health, morals, or well-being of the child; (5) The parents are unable to discharge parental responsibilities because of mental illness or mental deficiency, and there are reasonable grounds to believe that such condition will continue for a prolonged indefinite period; * * *.' '' State v. A. H., *supra*.

What a far cry those standards are from the ones involved in this case. Section 42-364, R. R. S. 1943, provides in part as follows: ''(4) Whenever termination of parental rights is placed in issue by the pleadings or evidence, the court shall forthwith appoint an attorney as guardian ad litem to protect the interests of any minor children. Such guardian ad litem

shall forthwith personally investigate the facts and circumstances on all matters pertinent to the best interests and welfare of the children. *If it appears to the guardian ad litem that the best interests and welfare of the children may require the termination of the parental rights of one or both parents,* he shall apply to the court in writing or orally on the record for such termination. *The court may then terminate the parental rights of one or both parents after notice and hearing and shall serve notice thereof upon the parents.*" (Emphasis supplied.)

The statute goes on to provide that the court shall notify the parents of their right to counsel at the expense of the county if they are indigent. However, it sets forth no guidelines for the court to follow, although presumably the permission to terminate parental rights after notice and hearing shall be as the "best interests and welfare of the children may require." This is the same general standard required of the juvenile courts as set forth in section 43-209, R. R. S. 1943, without the additional requirement that at least one of six conditions going to the unfitness of the parents has been found to exist. In addition to the two cited in State v. A. H., 198 Neb. 444, 253 N. W. 2d 283 (1977), the statute also sets forth abandonment of the child, repeated neglect and withholding of parental care, failure to provide necessary subsistence, education, or other care necessary for the child's health, or that the child has been determined to be a child described in section 43-202 (1) or (2), R. R. S. 1943.

Again, referring to State v. A. H., *supra*: "The statute's language must be sufficiently specific that persons of ordinary intelligence must not have to guess at its meaning. The statute must contain ascertainable standards by which it may be applied. This does not demand total absence of vagueness in a statute, but merely requires that a statute provide adequate notice of what conduct it requires or pre-

scribes [sic] as well as guidelines by which a violation of the statute may be fairly and nonarbitrarily determined."

Further discussing the charge of vagueness in the language of section 43-209, R. R. S. 1943, we went on to say in State v. A. H., *supra*: "These provisions appear to us to be sufficiently specific to apprise the appellant of why the state felt it necessary to terminate her parental right. This language does convey sufficiently definite warning as to prescribed [sic] conduct when measured by common understanding and practice. * * *

"We hold the statutes under attack provide standards which the average intelligent person should be able to understand and by which he or she can regulate his or her conduct." The only standard contained in section 42-364, R. R. S. 1943, is what appears to the guardian ad litem and is determined by the court to be in the "best interests and welfare of the children." There are no provisions "sufficiently specific to apprise" the parents of why the state found it necessary to terminate parental rights; there is no language conveying a warning as to prohibited conduct and no standards by which the parents could "regulate his or her conduct."

Section 42-364, R. R. S. 1943, being vague and lacking in adequate and understandable standards of conduct to which parents should conform so as not to risk the termination of parental rights, violates the due process requirements of the Fourteenth Amendment to the Constitution of the United States, and is therefore unconstitutional and void.

L. B. 169, Laws 1978, insofar as it provides for a method of termination of parental rights in a divorce action, is impermissibly vague and lacks adequate and understandable standards of conduct to which parents should conform so as not to risk the termination of parental rights. To that extent it violates the due process requirements of the Fourteenth Amend-

ment to the Constitution of the United States, and is therefore unconstitutional and void. However, even though there is no severability clause, it is obvious that, with the exception of several minor details not pertinent here, sections 42-364 and 43-201, R. S. Supp., 1976, and section 43-204, R. R. S. 1943, were in existence in their present form absent the offending subsection (4) of section 42-364, R. R. S. 1943. Therefore, it is equally obvious that the offending portion of L. B. 169, Laws 1978, can be separated from the remainder of the act and the latter enforced independent of the former, and the invalid portions did not constitute such an inducement to the passage of the valid parts that they would not have been passed without the invalid part. State v. Padley, 195 Neb. 358, 237 N. W. 2d 883 (1976). The act is severable.

In view of this disposition of the case, it is unnecessary for us to address the parents' remaining complaints.

The decree of the trial court is modified by striking that portion of the decree terminating the parental rights of Roland and Leilani as parents of Juanita Linn and awarding care, custody, and control to the Department of Public Welfare for permanent placement of Juanita; and custody of said minor child is placed in the District Court for Douglas County, Nebraska, jointly with the Douglas County Social Services, for appropriate foster care. The decree in all other respects is affirmed.

AFFIRMED AS MODIFIED.