REQUESTED BY: Dear Senator Venditte:
You have asked for our opinion on the constitutionality of LB 991. LB 991 is a bill intended to prohibit the sale and use of drug paraphernalia. We do not intend to engage in a section by section analysis of your bill. We believe that for purposes of this opinion it is sufficient to say that there are serious questions of constitutionality surrounding the bill. As you are aware, in order to meet constitutional muster criminal statutes must be specific. They must identify that which is prohibited with such specificity as will allow an individual of ordinary intelligence to conform their conduct to the requirements of the statutes without being required to guess at the meaning of such statutes. See Linn v. Linn, 205 Neb. 218, N.W.2d (1980). Conversely statutes must not be drafted in such a manner as to be overly broad. The definitions contained in section 1 of this act are extremely broad. For instance, the first paragraph provides that:
 ". . . [D]rug paraphernalia shall mean all equipment, products, and materials of any kind which are used, intended for use, or designed for use, in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of this act or the Uniform Controlled Substances Act. . . ."
Thereafter a number of specific things are listed.
The general definition would include such things as hose, rakes, and spades for caring for a marijuana patch, clay pots, or other nursery materials for growing marijuana, fertilizers, or in short, any sort of gardening supplies. Some kinds of presses would be contained within the definition; a number of chemicals could be contained with the definitions; wrapping paper, saran wrap, and baggies could be contained within these definitions.
Such things are in themselves innocuous and legally sold in a variety of institutions. We can hypothesize a situation in which the owner of a grocery store or nursery center was or should be aware that a particular customer grew, processed, sold or possessed marijuana, a controlled substance. Arguably, under section 4 such items sold by grocers or nursery owners would be in violation since they were intentionally delivering to another clay pots or saran wrap.
Subsection (5) of section 1 includes scales and balances used, intended for use, or designed for use in weighing or measuring controlled substances. Such scales are of a type used by pharmacists and scientists in the course of lawful endeavors. Must a scale merchant ascertain whether or not a particular individual seeking to purchase that item is one that he reasonably ought to believe intended to use it for illicit purposes connected with controlled substances?
Subsection (10) prohibits containers or objects used, intended for use, or designed for use in storing or concealing controlled substances. This could include such things as refrigerators, bread boxes, ornamental chests, safes, and other similar objects, again requiring ordinary merchants to determine whether or not they fall within the terms of the act.
The examples given above are intended to indicate that there is a substantial constitutional question about the vagueness and overbreadth of the statute.
Some cases have narrowed the focus of such statutory schemes.
See, Manson v. State, 168 Tex.Crim. 514, 316 S.W.2d 414;Cole v. State, 168 P.2d 593 (Okla.). In Rosenberk v.United States, 297 A.2d 763, a prosecution was initiated under a statute which proscribed the possession of criminal instruments The court found that bong pipes and such devices were not covered under the particular statute.
In United States v. Falcone, 311 U.S. 105 (1940), the United States Supreme Court was considering a conspiracy case. The defendants had been charged with conspiring to operate illicit stills. While not involving a constitutional claim, the Court said that one selling innocent goods to someone he knows intends to use them illegally does not bring the seller within the reach of the conspiracy statute. In LB 991 it appears that such an act could result in criminal sanctions.
In declaring unconstitutional section 28-4,127(1)(g), R.R.S. 1943, which made it a crime to be in a place where controlled substances were being used, the Nebraska Supreme Court said:
 "In State ex rel. English v. Ruback [135 Neb. 335, 281 N.W. 607], the court quoted from Fairmont Creamery Co. v. Minnesota, 274 U.S. 1, 10, indicating the invalidity of overbroad criminal statutes, stating: `It is not permissible to enact a law which, in effect, spreads an all-inclusive net for the feet of everybody upon the chance that, while the innocent will surely be entangled in its meshes, some wrongdoers also may be caught.'. . ." State v. Adkins, 196 Neb. 76, 81, 241 N.E.2d 655 (1976).
LB 991 arguably suffers from the same defect to which our court was alluding.
The statute then, in our opinion, would be difficult to defend against constitutional attack based upon the extreme reach of the definitional sections. Ordinary merchants would be required to determine whether or not there was reasonable grounds to believe that a purchase of their product intended to use the product in violating the Controlled Substances Act.