666 P.2d 771

In the Matter of John DOE, a child.

**STATE of New Mexico, ex rel. HUMAN SERVICES DEPARTMENT, Petitioner,**

v.

**Julie STAPLES, Respondent.**

No. 14692.

Supreme Court of New Mexico.

Feb. 18, 1983.

Paul G. Bardacke, Atty. Gen., James W. Catron, Asst. Atty. Gen., Human Services Dept., Santa Fe, for petitioner.

Jefferson R. Rhodes, Alamogordo, for Scott.

Elaine Moore Hebard, Hebard & Hebard, Alamogordo, guardian ad litem for John Doe.

Jack Whorton, Alamogordo, for respondent.

## OPINION ON CERTIORARI

STOWERS, Justice.

This Court granted certiorari in *State of New Mexico ex rel. Human Services v. Staples,* in which the Court of Appeals addressed the constitutionality of Section 40–7–4(B)(4), N.M.S.A.1978 (Cum.Supp. 1982). The Court of Appeals held that Section 40–7–4(B)(4) was void for vagueness and therefore reversed the decision of the trial court. Judge Walters dissented from the majority opinion and outlined her reasons for finding the challenged section neither vague nor indefinite.

We adopt the dissenting opinion authored by Judge Walters of the Court of Appeals as the opinion of this Court, thereby upholding the constitutionality of Section 40–7–4(B)(4).

The publication of both the Court of Appeals majority opinion, which we reverse, and the dissent, which we adopt, are ordered. This opinion is also to be published.

IT IS SO ORDERED.

PAYNE, C.J., SOSA, Senior Justice, and FEDERICI and RIORDAN, JJ., concur.

No. 5306.

Court of Appeals of New Mexico.

Nov. 9, 1982.

## OPINION

SUTIN, Judge.

The Department of Human Services (DHS) filed an application for termination of parental rights of a natural mother to her child pursuant to § 40–7–4(B)(4), N.M. S.A.1978 (Cum.Supp.1982). The mother filed a motion to dismiss the proceedings on the grounds of unconstitutionality. In its decision, the trial court concluded that the statute was constitutional and entered judgment that the parental rights of the mother were terminated. The mother appeals. We reverse.

Section 40–7–4(B)(4) reads:

The court shall terminate parental rights with respect to a minor child when:

(4) the child has been placed in foster care by a court order or has been otherwise placed by parents or others into the physical custody of such family and the following conditions exist:

(a) the child has lived in the foster home for an extended period of time;

(b) the parent/child relationship has disintegrated;

(c) a psychological parent/child relationship has developed between the foster family and the child;

(d) if the court deems the child of sufficient capacity to express a preference, the child prefers no longer to live with the natural parent; and

(e) the foster family desires to adopt the child.

Adoption was unknown to the common law, and is purely statutory and is to be strictly construed. *Gardner v. Hall,* 132 N.J.Eq. 64, 26 A.2d 799 (1942). Given a choice between a narrow, restrictive construction and a broad, more liberal construction, the latter must be chosen. *State ex rel. McDonald v. Whatcom Cty., Etc.,* 19 Wash.App. 429, 575 P.2d 1094 (1978).

Simply stated, if a "parent/child relationship" has "disintegrated" and a foster family desires to adopt the child, the court is compelled to terminate parental rights after a "psychological" foster "family" relationship has developed with the child who has lived in this foster home for an extended period of time. This is a method by which a foster family is substituted for a natural parent.

The mother claims this statute is unconstitutionally vague and indefinite. "A statute may violate due process if it is so vague that persons of common intelligence must necessarily guess at its meaning. * * * In determining vagueness, we consider the words in the context in which they are used." *State ex rel., Etc. v. Natural Father,* 93 N.M. 222, 225, 598 P.2d 1182 (Ct. App.1979). "When a statute is too vague to be effective, it is void." *Davis v. Smith,* 266 Ark. 112, 583 S.W.2d 37 (1979).

What is meant by 4(b):

The parent child relationship has disintegrated?

Section 40–7–2(H) says:

"parent" means a natural or an adoptive parent, or an individual who * * * has been established as the parent of an illegitimate child * * *.

Under strict construction, a "parent" designated in the singular, should not be enlarged to plural. The word "parent" commonly means a father or mother by blood. *Brummitt v. Commonwealth,* 357 S.W.2d 37 (Ky.1962). The father is the male parent and the mother is the female parent. *Boroughs v. Oliver,* 217 Miss. 280, 64 So.2d 338 (1953). However, it has been held "that the parents of an illegitimate child are included in the definition of 'parent' in the Adoption Act." *Interest of ICE,* 35 Ill.App.3d 783, 342 N.E.2d 460, 462 (1976). The word "parents" commonly refers to the natural father and mother. *Nunn v. Nunn,* 81 N.M. 746, 473 P.2d 360 (1970). *Ellis v. Hewitt,* 15 Ga.App. 693, 84 S.E. 185, 187 (1915) quoted the following from an early case:

"The word 'parent' is connected with no trade and is not a word of art. It means ordinarily mother, as well as father, and must be so construed."

The words, "parent or parents," and the word "parents" are also found in § 40–7–4.

When used in the form of "parent/child relationship," the word "parent," not being a word of art, is a vague and indefinite relationship. Used in the singular, does a mother/child relationship include a father/child relationship? By terminating the rights of the mother, can the State terminate the rights of the father, or must it do so in separate proceedings? Or was the "parent/child relationship" intended to include both parents to effect its purpose? The same vagueness applies to one "who has been established as the parent of an illegitimate child."

What is meant by the word "disintegrated"? It has not been defined. A synonym is "decay." Perhaps it means that a "parent/child relationship" has broken apart. By what means and under what circumstances does a relationship of parent and child break apart, creating a separation of the parent from the child? When does it begin and end? Does it mean that a parent has abandoned or abused or neglected the child or one who may have left the child dependent or homeless? The State did not pursue these avenues for termination of parental rights. The word "disintegrate" appears to be an innovation in this field. The dictionary definition does not apply the word to a human relationship. It is aberrant, inadvertently or mistakenly used. See, Freund, The Use of Indefinite Terms in Statutes, Yale L.J. 437 (1921).

*Keyishian v. Board of Regents of New York,* 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967) held that a statute requiring removal of a public school employee for treasonable or seditious utterances or act, without defining the terms "treasonable" or "seditious" were unconstitutionally vague.

Over a hundred years ago, the Supreme Court of Illinois could not determine the meaning of "proper parental care." The *People ex rel. v. Turner,* 55 Ill. 280 (1870).

The word "disintegrated" does not inform an ordinary person what conduct is required, or must be avoided, to prevent the termination of parental rights. By reference to the wording of the statute, parents should be able to determine what course of conduct to follow. The standard must be specific and direct enough so that an ordinary person will know what conduct is sufficient to justify termination of parental rights. To withstand a vagueness challenge a statute must state its standard with adequate clarity and establish sufficient boundaries for the law to be fairly administered. The evil that has to be avoided is conduct on the part of a parent that would deny the child the care, guidance or control necessary for his physical, emotional and medical needs. Parent/child disintegration does not have a precise meaning. It lacks metes and bounds.

It is difficult to conceive of a more valuable right then that of a mother to her child. Nor can few things happen to her with

more grievous consequences than to be deprived of her child.

What is meant by 4(c)?

a psychological parent/child relationship has developed between the foster family and the child;

*State Farm Mut. Auto. Ins. Co. v. Duran,* 93 N.M. 489, 492, 601 P.2d 722 (Ct.App.1979) defined "family" to mean that:

[O]ne or more persons live together in the same household, are supported by the head of the family in whole or in part, are dependent upon him for that support, and that the head is under a natural or moral obligation to render such support.

"Family" has many definitions. *Cicchino v. Biarsky,* 26 N.J.Misc. 300, 61 A.2d 163 (1948).

On the other hand, the Child Placement Agency Licensing Act, says:

"foster home" means a home maintained by an individual having the care and control, for periods exceeding twenty-four hours, of a child who is abused, neglected, dependent or homeless *and who is not placed for adoption.* [Emphasis added.]

Section 40–7A–3(E), N.M.S.A.1978 (Cum. Supp.1982). Whatever a "foster family" or a "foster home" might mean, we do not know. A "foster family" may or may not be a "foster parent," "foster mother" or "foster father." See *People v. Parris,* 130 Ill.App.2d 933, 267 N.E.2d 39 (1971); *Cicchino,* supra; *In re Norman's Estate,* 209 Minn. 19, 295 N.W. 63 (1940).

4(e) says:

the foster family desires to adopt the child.

We are uncertain as to the meaning of "foster family," those who may compose it, or whether they must be qualified or competent to express a desire, or whether the desire must be unanimous.

The termination of parental rights of a father, mother, or both, under § 40–7–4(B)(4) is a drastic result. No definite, planned period of time or method appears to destroy the unity of a family. "The role of parents in the life of a family has attained the status of a fundamental human right and liberty." *State v. Robert H.,* 118 N.H. 713, 393 A.2d 1387, 1388 (1978). The relationship between parent and child is constitutionally protected. "It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder." *Prince v. Masschusetts,* 321 U.S. 158, 166, 64 S.Ct. 438, 442, 88 L.Ed. 645 (1944). It is generally desirable for a child to remain with the natural parent because the child's need for a normal family life will usually best be met in the natural home.

The application of the vagueness doctrine to termination of parental rights preserves the unity of the family. It bars the State from excessive interference with family autonomy. Several courts have recently invoked the vagueness doctrine to overturn child neglect laws. See, *Roe v. Conn,* 417 F.Supp. 769 (D.Ala.1976); *Alsager v. District Court of Polk Cty., Iowa,* 406 F.Supp. 10 (D.Iowa 1977), *aff'd per curiam on other grounds,* 545 F.2d 1137 (8th Cir.1976); *Davis v. Smith,* supra; *Linn v. Linn,* 205 Neb. 218, 286 N.W.2d 765 (1980); Development-The Family, 93 Harv.L.Rev. 1157, 1233 (1980); Day, Termination of Parental Rights Statutes and the Void for Vagueness Doctrine; A Successful Attack on the Parens Patriae Rationale, 16 Journal of Family Law 213 (1977–78); Note, The Void-for-Vagueness Doctrine in the Supreme Court, 109 U.Pa.L.Rev. 67 (1960).

The State relies upon the fundamental rights of the child, the best interests of the child, the unfitness of the parent, and fundamental rights of a foster family. The void-for-vagueness doctrine was not challenged. Nevertheless, we find nothing in § 40–7–4(B)(4) which seeks to protect the fundamental rights or the best interests of the child. It focuses only on the disintegration of the parent/child relationship.

We hold that § 40–7–4(B)(4) is void for vagueness.

REVERSED. The statute being void, the child should be returned to the mother. The State shall pay the costs of this appeal.

IT IS SO ORDERED.

LOPEZ, J., concurs.

WALTERS, C.J., dissents.

WALTERS, Chief Judge (dissenting).

I respectfully dissent from the majority opinion which holds § 40–7–4(B)(4), N.M.S. A.1978, as enacted by Laws 1979, ch. 387, § 1 (now found in 1982 Cum.Supp.), unconstitutional.

██ The majority agrees with appellant that the section under attack is so vague and indefinite that persons of common intelligence must guess at its meaning. That is, indeed, the test to be applied when such a claim of unconstitutionality is made. *State v. Libero,* 91 N.M. 780, 581 P.2d 873 (Ct.App.1978). But in testing the statute, it is also an indispensable rule that the whole statute be brought under consideration. *Id.* Section 40–7–4(B)(4) is only a part of a subsection of the statute entitled "Termination of parental rights," which section, in turn, is only a part of the Act entitled "Adoption Act." (Section 40–7–1 to 40–7–11 and 40–7–13 to 40–7–17, N.M.S.A.1978 (1982 Cum.Supp.)). Subsection (A) of the statute requiring that "[i]n proceedings to terminate parental rights, the court shall give primary consideration to the physical, mental and emotional welfare and needs of the child," answers the majority's complaint that subsection (B)(4) contains "nothing . . . which seeks to protect the fundamental rights or the best interests of the child." That portion of the statute need not repeat what appears just before it; we need only to "consider the statute as a whole." *State v. Turley,* 96 N.M. 592, 633 P.2d 700 (Ct. App.1980).

██ The majority acknowledges that "parent" may mean "parents"; the opinion then suggests that "parent/child relationship" may not mean both "mother/child" and "father/child" relationships. As Justice Stephenson noted in *Huey v. Lente,* 85

N.M. 597, 514 P.2d 1093 (1973), when the Supreme Court overruled this same majority's decision that the predecessor of the current termination statute was unconstitutional, there is "difficulty in following this construction of the majority." (85 N.M. at 598, 514 P.2d 1093.) If common intelligence cannot supply the meaning of "parent," certainly the definition of "parent" at § 40–7–2 H of the Act is sufficiently broad and understandable to dispel any notion that a question exists whether "parent" may include either the female or male parent or both of them, or both parents of an illegitimate child.

██ The majority claims ignorance of the meaning of "disintegrated," and points out that the dictionary definition "does not apply the word to a human relationship." The dictionary example, "(the *disintegrating* features of an aging woman—Philip Wylie)," Webster's Third New International Dictionary, may not relate the word to a human *relationship;* it exemplifies, however, the validity of using the root word as a modifier of personal nouns. "Terminate" is not dictionary-defined in connection with a human relationship either, but no one would contend that termination of a marital relationship, or even of human existence, is incapable of being understood because the dictionary "does not apply the word to a human relationship" or to a human condition. "Disintegrated" has a well-defined, well-understood meaning. The statute is not vague because of that word.

I find it inconsistent to say at one point in the opinion that the use of "parent" in the phrase "parent/child relationship" states a vague and indefinite relationship; yet to point out in a later paragraph that such a vague and indefinite "relationship between parent and child is constitutionally protected," and then to proceed to discuss that relationship in terms of the parent's duties of " 'custody, care and nurture of the child * * * [and] preparation for obligations the state can neither supply nor hinder,' " as well as "the child's need for a normal family life * * * in the natural home."

It is equally as superficial to erase from one's mind the common meanings for "family" or "foster family." In its brief, the State quoted at length from the Supreme Court case of *Smith v. Organization of Foster Families,* 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977). That case is replete with the terms "foster family," "foster home," "foster parents," "foster children," "child," "natural parents," "foster care," "natural mother," "family," and other similar nouns. The case abounds with definitions and definitional discussions of those terms, and with footnotes which explain and expand upon the concepts of parental functions; the legal and emotional relationships between the child and the parents, the foster parents, and the state agency; and the psychological ties that are broken and formed between a child and its natural and foster parents. *Smith, supra,* devotes several pages to the discussion of "what is a family" in the context of biological and foster relationships, and the case teems with citations to cases and authorities on the subject of the development and disintegration of those relationships.

I cannot agree that from the great wealth of information and precedent available, and from a lifetime of familiarity with the English language, one must guess at the meaning of any of the words used in § 40–7–4(B)(4).

The termination statute in *Linn v. Linn,* 205 Neb. 218, 286 N.W.2d 765 (1980), cited by the majority, specified no standards whatever for determining whether termination was in "the best interests and welfare of the children." The statute struck down in *Roe v. Conn,* 417 F.Supp. 769 (M.D.Ala. 1976), did not provide for notice and hearing, absent immediate danger of harm, before removal of a child from its home, and it did not define (to the court's satisfaction) what constituted an "unfit" or "improper" home.

In *Alsager v. District Court of Polk Cty., Iowa,* 406 F.Supp. 10 (S.D.Iowa 1975), another case cited in the majority opinion, the trial court found the phrases in one subsection of Iowa's statute, "necessary parental care and protection," and "conduct . . . detrimental to the physical or mental health or morals of the child," to be "susceptible to multifarious interpretations which prevent the ordinary person from knowing what is and what is not prohibited." (406 F.Supp. at 18.) That court did not consider other stated conditions permitting termination, but found that the quoted language rendered the statute unconstitutional. It also concluded that the Alsagers were denied due process because a compelling state interest justifying termination had not been shown, and because notice to the Alsagers was defective. On appeal to the Eighth Circuit, however, the trial court decision was upheld on the notice issue and because of failure of proof. The constitutionality of the statute was expressly reserved for decision by the Iowa Supreme Court. *Alsager v. District Court,* 545 F.2d 1137 (8th Cir. 1976).

Thus none of the cases the majority cites regarding vagueness of termination statutes are similar or authoritative on the constitutionality of New Mexico's statute.

Our review of this matter is not to determine whether the trial court's decision was correct on the merits, whether the evidence was sufficient to justify its decision, or whether the statute was followed in reaching the result below. The decision of our Supreme Court (No. 14196, 21 N.M.S.B.B. 1295, filed September 7, 1982) directed us to confine our consideration to the arguments presented by counsel on appeal. The sole issue raised by appellant was that "SECTION 40–7–4[ (B) ](4), N.M.S.A.1978, AS AMENDED 1979, IS UNCONSTITUTIONAL. CONSEQUENTLY, THE COURT HAD NO GROUND TO TERMINATE THE PARENTAL RIGHTS BETWEEN MOTHER AND INFANT SON."

In my opinion the section challenged is not vague or indefinite but is constitutional; the challenged section provided a statutorily constitutional ground for terminating appellant's parental rights, and the judgment should be affirmed.